## James W. Romeyn v. James Caplis.

*Final order: Appeal: Injunction.* An order of court, adjudging a party guilty of a contempt, and imposing a fine and costs for violating an injunction, commanding him not to make any conveyance of, or creating any lien upon certain premises, is a final order, and appealable.

*Specific performance: Injunction: Contempt.* A bill was filed by complainant for a specific performance of a contract for certain lands, the legal title to which, subject to said contract, was in one Lyell, and who had executed a deed for said premises, leaving the name of the grantee in blank, and sent the same to his agent, who filled in the name of a purchaser.

Defendants were enjoined from making any conveyance of, or creating any lien upon, the said premises, or in any way changing the apparent title.

One of the defendants, subsequent to the service of the injunction, obtained from said Lyell a deed confirming the previous one.

Whether this was a violation of the injunction: *quære;* the court being equally divided; CAMPBELL and GRAVES J. J. holding the affirmative, and COOLEY CH. J. and CHRISTIANCY J. the negative.

*Heard October 15th. Decided October 24th.*

Appeal in Chancery from Wayne Circuit.

The bill in this cause was filed to enforce the specific performance of a contract for the purchase of certain real estate in the City of Detroit.

An injunction was issued, forbidding defendants from "making any conveyance of, or creating any lien upon said premises, or in any way making any change in the apparent title of the same."

One of the defendants was adjudged guilty of violating the injunction, and an appeal was taken from this order.

The facts are stated in the opinion.

*D. C. Holbrook,* for defendant and appellant.

It is claimed that the appellant is guilty of altering the apparent title to the property in question, by obtaining a second deed to cure errors in a prior one.

If the first deed was valid, the apparent title was the real title, and the procuring a like second deed was not altering or changing any title.

And the appellant contends that the insertion of the name of a grantee before delivery under the (to say the least) implied authority, bound Hugh Lyell when he took the money by consent.

The title was either real or apparently so, just according to the intent of Hugh Lyell, and by his second deed he expressly confirmed and affirmed the first deed with the name inserted, as his act.

The fact that the first deed was witnessed and acknowledged matters not; the insertion of the name was no alteration, if done with the consent of the grantor, and, as such, was good on delivery.

There was, therefore, no violation of the injunction, and the defendant, Caplis, should not have been adjudged guilty of contempt.

*James W. Romeyn,* for complainant and appellee.

This is an appeal from Wayne Circuit by James Caplis, from an order adjudging him guilty of a contempt in violating a preliminary injunction.

An order, to show cause why an attachment should not issue, having been made, the court below, on hearing, imposed a fine of $100. From this the defendant appeals.

1. The appellant was held liable for a criminal contempt, and was fined accordingly; the court having discretion within certain limits, under the statute. In this case, the decision of the *People v. Simonson, 9 Mich. 492,* does not apply. The fine is to go to the county, not to the

party for whose protection the injunction was granted. The appellee does not claim that "an actual loss or injury has been produced to the party by the misconduct alleged," nor does he ask any sum "to indemnify him." The misconduct is brought to the notice of the court below by the complainant acting as *amicus curiæ*, and the fine is imposed by the court in vindication of its authority, and of the obligation of the writ issued under its direction.

2. This is not such a final order as gives a right to appeal. The merits of the case had been decided by a decree therein made long previously to the contempt order. From this general decree no appeal has been claimed, and it is now too late to review it. By it all the questions at issue are finally disposed of. Caplis appears alone to contest a criminal order affecting him personally.

In the case of *Duncan v. Campau, 15 Mich. 415*, an order appointing a receiver was held interlocutory and unappealable; though in *Lewis v. Campau, 14 Mich. 458*, an order, professedly interlocutory, but really in effect a decree, was held appealable. Under these decisions, the court will examine the subject matter of the bill and the record, and will decide the question of dismissing an appeal according to the fact and intent.

The object of the bill had been satisfied by the decree. The proceeding for contempt and judgment thereon were collateral and incidental. The right of appeal is statutory — *2 Comp. L. p. 1030* — and will be strictly construed.

3. The order of the court below was correct and proper under the circumstances.

The court has the power, and should exercise the right, to protect itself, and enforce its order or process.

The record shows a clear and deliberate violation of the injunction, and this court will examine into the circumstances, for the purpose of deciding upon the intent of the party violating it, in which intent the criminality of the action of the appellant consists.

Not even a service of the writ of injunction is necessary, in many cases, to bind the party — simple notice will be sufficient. — *1 Barb. Ch. 634.* The doctrine is well settled. And, even though the injunction be irregular or erroneously obtained, the defendant may not violate it. — *Id. p. 636; Sullivan v. Judah, 4 Paige, 444.*

The defense, that in this cause the "apparent title" was not changed, is negatived by the record, and the admissions under his oath of Caplis himself.

GRAVES J.

In this case, the defendant Caplis asks us to review, on appeal, an order made in the court below, adjudging him guilty of a contempt, and imposing a fine upon him of $100, and requiring him to pay to the complainant the costs and expenses of the proceeding, taxed in the order at $10.

The contempt imputed to the defendant, consisted in an alleged violation of an injunction issued from the court below, and served upon Caplis, and enjoining him, and the defendants Anderson, Lyell, and Roberts, among other things, from making any conveyance of, or creating any lien upon the premises described in the writ, or in any way changing the apparent title of the same.

In order to decide the questions raised here, it is unnecessary to mention all the facts belonging to the case, but only such of them as have a particular bearing on those questions.

The premises mentioned in the injunction were situated in Detroit, and the defendant Gray held the title to them, and agreed in writing to sell them to the defendant Anderson.

Subsequently Gray conveyed the premises by quit claim deed to the defendant Lyell, who resided in Scotland. Anderson agreed with the mother of the complainant to sell

ROMEYN v. CAPLIS.

the premises to her, subject to the payment of the amount due, and to become due on the agreement made by Gray.

The complainant subsequently succeeded to the rights of his mother, and filed the bill in this case to obtain the legal title to the property. The bill set forth the foregoing and other facts to show the equities of complainant, and stated in substance that the defendant Lyell had executed in Scotland a quit claim deed of the premises, without naming any one in it as grantee, or putting any revenue stamp upon it, and in that condition had sent it to one Vincent J. Scott, of Detroit, without any authority whatever to any one to insert the name of any person as grantee, and that subsequently, and on the procurement of Caplis, and without any authority, the name of the defendant Roberts was inserted as grantee, and that the instrument so prepared was delivered to the defendants Caplis and Roberts, and shortly thereafter stamped for $6.50, and recorded in the office of the Register of Deeds for the County of Wayne.

It was also stated in the bill that the two contracts mentioned were likewise recorded in said office, and that shortly after the contract with her, Mrs. Romeyn took possession of the premises, and that the same were occupied by her until her death, and by her children thereafter, and until the filing of the bill.

The complainant having obtained a decree in the cause, an affidavit was filed in the court below in May last, made by Theodore Romeyn, containing, among other things, the following statement: "Notwithstanding said injunction it appears that a second deed of said premises, dated on the 28th day of August, 1866, was prepared by said James Caplis, acting for said Roberts, and procured by him, said Caplis, to be sent to said Lyell for execution, after the bill in this case had been filed and the said injunction served; and that said second deed after its execution was received by said Caplis and delivered by him to said Roberts, and that it was subsequently recorded through their procurement."

Such proceedings were thereupon had, that the court below, on. the 15th of June, 1868, adjudged the defendants Caplis and Roberts guilty of the misconduct alleged and that such misconduct was calculated to, or did actually defeat, impair, impede or prejudice the rights of the complainant in the cause; and on such adjudication the court imposed the fine before mentioned.

It has been contended before us that the order in this case was not one from which an appeal could be taken since the appellee did not claim than an actual loss or injury had been produced to the party by the misconduct alleged, and did not ask for any sum to indemnify him. I think that this position can not be sustained. The injunction was an appropriate civil process, belonging to the remedy in the action in which it issued, and the proceeding for its violation was under the chapter entitled, "of proceedings, as for contempts to enforce civil remedies, and to protect the rights of parties in civil actions."

The order complained of was final and not merely a step in the course of proceeding contemplating further action by the court in relation to the same matter; and it belonged to that class of proceedings which are provided to secure obedience to the necessary processes of courts in civil cases. It adjudged the party guilty of wilful disobedience of the injunction, and required him to pay a fine, under peril of imprisonment. It did not stop here. It expressly awarded to the complainant the costs and expenses incurred in prosecuting the contempt, and which were fixed by it at $10. This part of the order can not be reconciled with the claim of the appellee, that the prosecution of the contempt was only carried on by the complainant as the friend of the court, and that the infliction was for the sole purpose of vindicating the authority of the court.

The essential character of the proceeding indicates very clearly that what was sought to be accomplished, and, in fact, done, was intended to be in keeping with the purpose of the statute, which has been referred to.

The right of appeal in similar cases has long been recognized and sanctioned elsewhere, and the necessity, therefor will not be denied.— *McCredie v. Senior, 4 Paige, 378; Spaulding v. People, 10 Id. 284; Same on appeal, 7 Hill, 301, and 4th How. 21; People on relation of Davis v. Sturtevant, 9 N. Y. (5 Sel.) 263.*

It is by no means intended to be asserted that the right of appeal carries with it an authority to the appellate court to take the place of the court below on the hearing for contempt for every purpose, or to re-examine or revise every matter involved in the judgment; but the power to review the determination below, in respect to questions of jurisdiction, arising out of the determination itself, or in relation to the fact of contempt as depending upon the question whether the terms of the writ covered the specific act supposed to be a breach of the writ, must, it is conceived, be fully conceded.

Was the procurement and registry of the second deed, as stated in Romeyn's affidavit and as found by the court below, a violation, as adjudged by the court, of that clause in the injunction, which forbade the "making any conveyance of or creating any lien upon said premises or in any way changing the apparent title of the same?"

"The language of an injunction, like that of all other instruments, must have a reasonable construction with reference to the subject about which it is employed."— *People v. Sturtevant,* already cited.

In the case in question, the injunction had reference to the premises which were the subject matter of the litigation and to the co-existing condition of the title, real and apparent. It had reference to the relative positions and claims of the parties, as they then were, the actual state of the controversy, and the opportunities growing out of the nature of the case for adroit management by some of the defendants, by which the subject of the controversy might be made to elude the grasp of the suit.

When the injunction issued the appellant was earnestly insisting, as he has continued to insist ever since, and still urges, that the first deed from the defendant Lyell, and which was placed upon record was a valid deed.

The complainant, however, maintained that such deed was invalid, and the legality of that instrument was accordingly made one of the chief questions in the case in which the injunction issued.

It was deemed important that so long as that point should remain undecided the parties should be deprived of all power to thwart or embarrass a decision upon it, or change the existing muniments of the title, or induce a state of things which would make a decision upon the case as constituted, indecisive of the controversy.

Though the instrument was upon record, and the record conveyed to no one any intimation that the original was tainted with illegality or was defectively executed, there was, nevertheless, pending in the court below the suit instituted by the complainant having, for its outspoken object, the cancelling or setting aside of such original for defective execution and illegality. To the parties and all others having knowledge of such suit, the apparent title of the premises must have been one depending, in no inconsiderable degree, upon the point involved in the dispute as to the execution of the first deed. It must, therefore, have been evident that any new instrument from the defendant Lyell, being so drawn as to import a confirmation of the first conveyance to Roberts, would have the effect to change the apparent title. Was the second instrument made by Lyell of that character?

An examination of that deed will answer this question. Besides the usual clauses of a quit claim deed, the instrument in question contains the following matter:

"The party of the first part, having heretofore, to wit: on the 22d day of December, A. D. 1865, executed a former deed of said premises, with the name of the grantee in

blank, and transmitted the same to Vincent J. Scott of Detroit, Michigan, with authority to introduce and insert therein the name of such grantee, as should be so inserted in payment of the consideration money, and on receipt thereof to deliver the said deed to such grantee, duly stamped; and said Scott having complied with my said instructions in that respect, and having inserted the name of Ellis Roberts, of Detroit, Michigan, as such grantee, and delivered to him said deed, which has been duly recorded; and, whereas, it is deemed prudent, by said grantee, that a deed by way of confirmation should be made by me directly to him. Now, therefore, it is understood, and this conveyance is made by way of confirming said former deed of said premises to said Roberts, which is hereby in all respects approved and adopted as my act and deed, and as taking effect from the date of its delivery on my behalf by said Scott to said grantee."

It is seen that the second instrument purported upon its face to be one confirmatory of the first, and to have been intended to meet and cure the very defect which the complainant alleged in his bill to be a fatal one in the title of his adversary.

This instrument was placed upon record. Before this deed was received, the apparent title was one in some degree, certainly, depending upon an instrument assailed in chancery as defectively executed. After it was received and recorded the apparent title was one which, in so far as it depended upon the deeds from Lyell, was seemingly made sound and sufficient against the charge so brought against it by the bill. It seems to me very evident, therefore, that the apparent title was different after the second deed, from what it was before; and if this be correct, there must have been a change in the apparent title as a consequence of the second deed.

It is maintained on the part of the appellant that the first deed was valid, and, being so, that the apparent title

was the real title, and that, therefore, the second deed produced no change.

This argument involves an assumption of the very question which was in dispute.

The parties were directly opposed upon the precise point in the chancery case, and a leading object of the injunction was to prevent what was done, while that question should be in course of litigation.

The appellant certainly could not justify himself in procuring the second deed, by alleging the legal sufficiency of his side of the issue on that question in the chancery suit.

The second instrument declared, in substance, that Roberts, the nominal grantee, believed the evidence of his asserted title would be better, if supported by the confirmation which the second deed assured.

The appellant aided in procuring such second deed in the form in which it stands, and this circumstance, in connection with the other facts implicating the appellant in the struggle for the property, must be taken to imply an opinion on his part that such second deed would at least improve the appearance of the title, if not the title itself. In this opinion I think he was correct, and that the consequence of his conduct, in this particular, corresponded with his intention far enough to constitute the violation of which he was convicted.

I think the order below should be affirmed, with costs, and the case remitted for further proceeding.

COOLEY CH. J.

James W. Romeyn filed his bill in the court below for the specific performance of a contract for the conveyance of certain lands, the legal title to which, subject to the contract, had been in Hugh Lyell, a resident of Scotland. The bill alleged that Lyell had made a deed of these lands, leaving the name of the grantee in blank, and sent it to

one Scott that he might receive payment for Lyell; that Caplis had caused the money to be paid, and the blank in the deed to be filled with the name of Ellis Roberts, and that, under this deed, it was sought to hold the lands in disregard of the rights of complainant. Lyell, Caplis and Roberts were made defendants, and the bill prayed that they might be enjoined from making any conveyance of, or creating any lien upon, the premises, or in any way changing the apparent title of the same  A preliminary injunction was granted in accordance with the prayer.

It is obvious that, under this bill, if the complainant established his case, he would be entitled to a decree for a conveyance of the lands, from the defendant holding the legal title, on making payment of the amount due; and this payment, on the facts set forth, must be made to Roberts, who, as between the three defendants, would have the legal or equitable right to the moneys.  The bill alleged the deed from Lyell to Roberts to be invalid; but whether it was so or not was of no consequence to complainant, except as its legal invalidity might preclude Roberts from setting up and maintaining the claim to have been a *bona fide* purchaser, not affected by complainant's equities.

The injunction which was granted was important to prevent new elements of doubt and difficulty being brought into the case by liens in favor of, or grants to third persons who might thereby acquire rights, without knowledge of the complainant's claim.  For this purpose it was proper to grant it, but for any other purpose I am unable to perceive how it could have been either needful, proper, or even justifiable to award it.

After knowledge of the injunction had been brought home to the defendants, Caplis procured Lyell to execute a deed of confirmation of the prior deed, reciting therein the facts which were supposed to render the other defective; and this deed was placed upon record.  The procuring of this deed is the act which is alleged to be a breach of the

injunction, and for this he was fined by the Circuit Court.

A strict and technical construction of the writ may bring this act within its prohibition; but I have no idea any such act was within the contemplation of the officer who granted it. The writ should have a reasonable construction, in view of the remedy sought by the bill, and of the acts within the power of the defendants which might have a tendency to embarrass its enforcement. Those acts were unquestionably meant to be prohibited; but to suppose that the officer allowing the writ meant to go further and prohibit acts which were purely matters of indifference to the complainant, is to impute to him an abuse of the judicial function by the unnecessary and wanton exercise of arbitrary power.

It *was* a matter of pure indifference to the complainant, whether the first deed from Lyell to Roberts should be followed by a deed of confirmation or not. Such a deed might prevent Lyell from subsequently contesting the right of Roberts, but it could not affect the right of complainant, make new evidence necessary, introduce any element of doubt, or in any way or manner change the aspect of the case. The facts as they existed when the defendants were subjected to the process of the court, were the facts upon which the right of complainant was to depend, and any change of title as between themselves would only raise questions as to who was entitled to the purchase money; and this question would be one to be settled between the defendants, and would not concern the complainant, who was seeking to pay to whomsoever was entitled.

On the other hand, it might be a matter of great importance, as between Roberts and Lyell, that this deed should be obtained. A considerable sum of money had been paid, for which nothing had been received, except a deed of doubtful validity. If complainant was defeated in the suit, Lyell might claim the land. If complainant succeeded, Lyell might demand the purchase money. In any

event, therefore it was important that any doubt respecting the validity of the first deed should be set at rest as between the parties to it, and the proper mode of accomplishing this was by deed of confirmation. As such a deed could not affect complainant, it may fairly be assumed that it did not occur to Caplis that he was committing any legal wrong by procuring it.

It is said, however, the procuring the deed is within the words of the prohibition. I do not think we should be diligent to discover a criminal offense in a harmless act; or that, on a question of doubtful construction, we should lean in favor of guilt rather than of innocence. But to me, the construction of this writ does not appear to be doubtful. These defendants—as to all of whom the rights of the complainant were fixed by the filing of the bill and service of process—were enjoined from making any conveyance or creating any lien in favor of third persons. In view of the purpose of the bill, this is the only reasonable construction. The last clause embodies the whole idea of the writ. The defendants are forbid, "in any way changing the apparent title" to the land. Now the apparent title, that is, the title as it appeared, both by the deed and by the record, was in Roberts. The new deed did not in any way change this apparent title. If there were any circumstances not appearing by the papers, which might affect the title, it did not change those. The act was not aimed at the complainant; it did not bolster up a title to his prejudice; so far as its recitals could be of any force, they favored the complainant by formally admitting the prior defects; and we need have no other evidence of the harmless nature of the act of procuring it, and the absence of guilty intent, than the fact that no attempt whatever was made to use it against complainant, and that the deed was first brought to the notice of the Circuit Judge after he had decided the case between these parties,

on the merits, and on the facts existing when the bill was filed.

I think the order should be reversed.

CHRISTIANCY J. concurred.

CAMPBELL J.

I concur in holding the order complained of in this case as a final order open to appeal. But I see no error in the action of the Circuit Judge. I agree entirely with my brother GRAVES.

The propriety of the Injunction is not a matter into which we can inquire at all. It was a matter purely discretionary, and no appeal would lie from an order either granting or dissolving it. The court saw fit to grant it and did not see fit to dissolve it, and a violation of it was therefore a contempt of court. No party can decide for himself, whether he will obey or disobey a valid injunction. Until he obtains a dissolution of it, any disregard is contumacious.

The injunction prohibited Hugh Lyell, Caplis, Roberts, and Anderson from "*making any conveyance of, or creating any lien upon said premises, or in any way changing the apparent title of the same.*" The bill charged, and the evidence showed, that Hugh Lyell had sent over a deed neither stamped nor filled in, and that Caplis had got it filled in with the name of Roberts, as grantee, and that it had been recorded. It was distinctly charged in the bill that the deed was filled in without authority, and this was a matter still open to proof at the time the alleged contempt was committed. If true the deed was a nullity, and the legal title still remained in Hugh Lyell, while the apparent title was such as this deed could give, and no more.

The injunction was addressed to all the defendants before named, Lyell as well as Roberts and Caplis, and under it Lyell could not give and the other parties could not

receive any additional rights. If the deed was void it could not be made good, and, being disputed, no act could be lawfully done in aid of it, whether valid or nugatory. The injunction commanded that everything should be left *in statu quo*. Even had the proof shown—which it certainly does not—that the deed was beyond doubt valid, yet the case was not then ripe for proof, and the contempt could not be purged by matter *ex post facto*. It also appears that in the first days of July, 1866, Mr. Lyell had been served with a copy of the injunction, and on that account had deferred executing this second deed. But had he not been so informed, Caplis knew it, and by obtaining this conveyance was as much a party to its being made, as if he had been the grantor.

I think this conduct was a violation of both clauses of the injunction. The deed was a conveyance beyond any question, and it also worked a very serious change in the apparent title. Before it was executed and recorded, the title was apparently derived from a deed from which complainant might, if the bill was true (and, at this stage of the proceedings, it was a matter in controversy), have had no occasion for alarm so long as the facts were attainable. The new deed was one which, in a court of law, at least, would have been valid. A title derived from one deed is not really or apparently the same as one derived from another, and intervening rights or liabilities might, and in most cases would, rest on very different grounds. And the fact that the misconduct of a party to a suit can not, by reason of its pendency, avail anything, does not make it any less real. A conveyance to a third party, if a notice of *lis pendens* was filed, would have no more effect than a transfer to a co-defendant, and would not require such third party to be brought in. The transfer *pendente life* would be as practically nugatory in one case as in the other, and no one could get any greater advantage from it to the

prejudice of complainant.  If we are to regard these proceedings as thus made a part of the public records, which all persons.would notice, the apparent title would be changed still more seriously; for, by the change, Roberts, who was originally brought in only as setting up a cloud upon title under a void deed, became the holder of all the rights of Hugh Lyell, and became the party ostensibly entitled to the redemption money — thus entirely changing the issues as to both.

An injunction to prevent the transfer of property under an invalid deed, or one claimed to be such, is not granted merely to prevent the wrong doer from profiting by it, for the bill can always be made such notice to the public as to prevent this.  It is granted to prevent him from making any further annoyance to complainant by changes which will probably be fruitless, but which may nevertheless require or suggest new complications in litigation.  No injunction would elude the ingenuity of parties without requiring in most cases absolute inaction, and if the court so concludes, the parties can not resist its mandate.

I can conceive no ground for supposing the violation was not intentional.  Even Lyell waited nearly two months because he understood the injunction as preventing his action.  And such is, I think, the natural inference.