MICHIGAN TRUST CO. *v.* McNAMARA.

*In re* McNAMARA.

CONTEMPTS — VIOLATING INJUNCTION — EQUITY — EXECUTORS — ESTATES OF DECEDENTS.

Where a daughter of one of the heirs of a decedent attempted to interfere with the control of real property of the estate in the possession of the administrator, a trust company, which filed an injunction bill and secured a restraining order prohibiting respondent from trespassing upon the land or interfering with the tenants who leased the property from such administrator, and respondent thereafter claimed the right to ignore the injunction and tried to eject the persons occupying a portion of the land, of which the respondent claimed to have been in possession as agent of her father during a short period of time, the conviction of respondent for contempt of court was warranted, and a fine properly imposed, as the administrator claimed to have no knowledge of such alleged possession by respondent and she refused to recognize its authority or the jurisdiction of the court.

Appeal from the superior court of Grand Rapids; Stuart, J. Submitted April 20, 1914. (Docket No. 77.) Decided October 2, 1914.

Bridget McNamara was convicted of contempt of court and she appeals. Affirmed.

*Bridget McNamara, in pro. per.*

*Thomas P. Bradfield* (*Kleinhans, Knappen & Uhl,* of counsel), for appellee.

McALVAY, C. J. This is an appeal from an order of conviction and sentence for contempt of court imposed upon defendant at the instance of complainant by the superior court of Grand Rapids. Complainant filed its bill of complaint in that court against defend-

ant, showing that it was and had been for more than a year theretofore in possession and control of certain land in the city of Grand Rapids as administrator of the estate of Mary McNamara, deceased, and that defendant, without any right, was interfering with such possession and control in various ways, and prayed for an injunction against defendant restraining her from trespassing upon said land or in any way interfering with it and with complainant's possession and control of the same. On the same day an injunction was issued in accordance with the prayer of the bill of complaint and a copy of the same was duly served upon defendant and return was made into court by a deputy sheriff of Kent county. Afterwards, complainant filed its petition in said cause, supported by affidavits showing that defendant had violated said injunction, and asking that an order issue to defendant to show cause why she should not be punished for contempt for such violation. The order to show cause was issued and duly served upon defendant. Other proceedings, not necessary to be stated in detail, followed in due course, which included an attachment against defendant, an answer by defendant to the order to show cause, interrogatories filed by complainant for defendant to answer, and defendant's answers to such interrogatories. A hearing of the matter was had before the court upon affidavits and testimony taken in open court, which resulted in the conviction and sentence of defendant, determining that she was not at the time of the service of the injunction on her, or at any time, in lawful possession, or in possession in any manner, either by her attorney, or otherwise, of the land described in said injunction, and that she had committed the acts of misconduct and contempt charged and alleged. The judgment and sentence concludes as follows:

"It is ordered and adjudged, and the court now here

doth hereby order and adjudge, that the said defendant, Bridget McNamara, is guilty of the said misconduct and contempt charged and alleged, and that the said misconduct and contempt was calculated to and did injure, impair, and prejudice the rights and equities of the complainant in this cause, and that a fine of $10 be imposed on the said defendant, Bridget McNamara, for her said misconduct and contempt, and that she, the said Bridget McNamara, stand committed to the common jail of the county of Kent, there to remain charged with such contempt until the said fine be fully paid and satisfied, provided that such commitment shall not exceed 10 days."

This is the order and sentence from which defendant has appealed. No question as to remedy is presented. We, therefore, express no opinion upon that question.

In two early cases this court considered and determined contempts for violation of injunctions upon appeals from such orders. *Romeyn* v. *Caplis,* 17 Mich. 449; *Wilcox Silver Plate Co.* v. *Schimmel,* 59 Mich. 524 (26 N. W. 692). This conviction and judgment was based upon the findings and opinion of the court, which, for the purpose of a better understanding of the dispute in the case, is included in this opinion, as follows:

"The bill in this case was filed August 2, 1909, by the Michigan Trust Company, administrator of the estate of Mary McNamara, deceased, duly approved by the probate court for the county of Kent, to restrain the defendant from interfering with the complainant's possession of certain vacant lands comprising a portion of the estate of Mary McNamara, deceased, located near John Ball Park in the city of Grand Rapids. The bill asks that she be restrained from interfering with or annoying any of the tenants or lessees of the complainant, and from in any way interfering with the complainant's possession of the land or in any way trespassing upon the land, or in any way interfering with the land and from leasing or attempting to lease said land, and from interfering

with said land in any way whatsoever. The bill was sworn to and supported by an affidavit of a third party who was a tenant of the complainant and whose booth or refreshment stand upon said land had been partially demolished by the defendant.

"The vacant property belonging to the estate at one time consisted of about 40 acres, but June 28, 1908, or thereabouts, that part of the property lying west of Valley avenue, consisting of about 30 acres, was sold to the city of Grand Rapids by the complainant under the order of the probate court of Kent county.

"The Michigan Trust Company became special administrator of the estate of Mary McNamara about October 26, 1905, and since that time, either as special administrator or administrator, has had possession and control of the real estate above referred to. Until the portion west of Valley avenue was sold to the city in June, 1908, they rented the entire 40 acres from time to time to such circuses and other out-of-door entertainments as visited this city. The complainant knew nothing about any claim by the defendant to the possession or right of possession of said property until the day the bill of complaint was filed, when the defendant ordered one of the tenants of the complainant off of the land and threw down and demolished his partially erected booth.

"Upon the filing of the bill setting up these and other facts, the court issued an injunction restraining the defendant as requested by the bill, and the injunction was served on the defendant on the same day, viz., August 2, 1908. After being served with the subpœna, a copy of the bill and the injunction, the defendant apparently took no notice whatever of the injunction, but, if anything, became more active in her endeavor to oust the tenants of the complainant, and openly ridiculed the authority of this court to the sheriff of this court who served the injunction. When these matters were brought to the attention of the court, by affidavit, an order was issued requiring the defendant to show cause why she should not be punished for contempt, and this order, with the petition and affidavits upon which the order to show cause was based were served by the sheriff upon the defendant. The order required her to appear in court at 9:30

o'clock in the morning of August 3d. The defendant did not appear as required by the order to show cause. In fact the sheriff informed me that she stated when he served the order that she would attend to the injunction when she got good and ready, and that she was a British subject.

"After the time for her appearance in court had expired, it being apparent from her statements to the sheriff and her conduct that she did not intend to appear, I issued an attachment or warrant ordering the sheriff to bring the defendant before the court at 3 o'clock that afternoon, viz., August 3, 1909. When defendant appeared in court in the custody of the sheriff on the afternoon of August 3, 1909, she was not at that time represented by counsel, and I asked her whether she desired to retain an attorney. She stated her attorney was in Chicago, and she would have to send word to him; that she did not desire to employ any attorney in this city. I explained to her at some length her rights and duties and suggested that she get an attorney and prepare her answer to the order to show cause. She said she was a British subject, and that the court had no right to interfere with her. I explained that if the injunction was improperly issued I would be glad to set it aside and modify it as soon as she could show me it would be set aside, and I suggested an adjournment until she could prepare her answer. I asked her to promise to remain away from the property and not create any more disturbances there in the meantime. She positively refused to agree to remain away from the.property. I told her I disliked very much to remand a woman to jail, and I tried to persuade her to promise to remain away temporarily at least. She replied she would take the jail. She asked that the matter be held open until her Chicago attorney could be present and I granted this permission.

"Two days later, the defendant having remained in jail in the meantime, on the 5th day of August, the defendant filed an answer to the order to show cause, and appeared by Ellis & Ellis of Grand Rapids at that time. This answer admitted the violation of the injunction, but claimed possession of the land by the defendant, and that on that account the defendant was not required to obey the injunction. As a result of

this hearing, I stated that I was willing, if either parties desired it, to go on with the matter and grant time for the filing of interrogatories, but I suggested that defendant had punished herself enough, and if no further disturbance was intended or committed, I was willing to let the matter rest, pending the filing of an answer and a hearing on the merits of the main case. At the same time, I explained to the defendant that she must not consider because she had been leniently dealt with that she could ignore the injunction and told her the injunction must be obeyed, or she must take steps to have it set aside in an orderly, regular way.

"No answer was filed by the defendant to the bill of complaint, and I was informed by the solicitor for the complainant that the defendant had left the State, and that he and the defendant's solicitors, Ellis & Ellis, had agreed, since no further trouble seemed probable, to let the contempt matter drop.

"No disturbances that were brought to the attention of the court occurred in the year 1910, but on June 14, 1911, the complainant again applied for an order to show cause why the defendant should not be punished for contempt because they were having trouble on account of booth and refreshment stand privileges for the Barnum & Bailey circus, which was to give two performances on June 15th, on the part of the land sold to the city and across the street from the part retained by the estate. An order to show cause was issued on June 14th, returnable forthwith, but this order was not served until the 31st day of July, 1911, at 6:30 o'clock in the forenoon. The sheriff who served the order personally informed the court of the manner in which the defendant received the order to show cause, and, it appearing to the court from the report of the sheriff that the defendant was wilfully refusing to appear and did not intend to appear and show cause, and it appearing from affidavits that she was wilfully violating the order of the court, I ordered her again brought before the court at 3 o'clock in the afternoon. When brought before the court on the 31st day of July, she asked that the matter be held open until Friday, August 4th, until her Chicago attorney could prepare her defense, and when she appeared in court on August 4th, on the order to

show cause, she asked that the matter be continued until August 9th. Both of these requests were granted. She was remanded on July 31st, to the custody of the sheriff unless she furnish a bond in the sum of $1,000 for her appearance. The bond was not furnished; she stating she preferred to go to jail.

"Still another adjournment was granted at the request of the defendant. Finally, on August 14th, again by Ellis & Ellis of this city she filed a motion to quash the attachment, and the matter was argued on August 14th, by counsel for both parties. The motion to quash the attachment was denied on August 16th. An order was also entered on August 16th, releasing her from custody and extending the time to show cause until August 19th. On the 19th, defendant's answer to the order to show cause was filed, and on the 23d interrogatories were filed. On the 31st day of August, 1911, answers to the interrogatories were filed. The substance of her answer was that she, as attorney in fact for her father, one of the heirs of Mary McNamara, deceased, was in possession of the property at the time the injunction was served upon her, and therefore she was not required to obey an injunction or even notice it in any way.

"The wilful violation of the injunction alleged and set up in the affidavits filed by the complainant were admitted in the answer of the defendant, and in her answers to the interrogatories filed, and she denied that the trust company had any right in, or any possession of, the land. Time was given to the complainant to file counter affidavits to the answers of the defendant to the interrogatories. These were filed on September 22, 1911, and on November 2, 1911, the defendant filed further affidavits in her defense to the order to show cause. She has not appeared generally in the case by attorney or demanded a copy of the bill of complaint or answered the bill of complaint.

"On January 23, 1912, I made an order setting the contempt matter for argument on January 27th. On January 27th both parties appeared and the matter was fully argued and submitted. At this hearing certain files of the United States Circuit Court were offered in evidence, also an affidavit by Bridget McNamara stating that she never had a power of attorney of any

kind from her father, James McNamara, in regard to the estate of Mary McNamara, deceased. The substance of her defense seems to be that occasionally after the death of Mary McNamara, deceased, she induced certain persons to occupy a few square feet of this land, for a day or two at a time, as her tenants. Even if this is true, this occupancy was entirely unknown to the complainant, the Michigan Trust Company, and never, until the time the bill of complaint was filed, interfered in any way with their occupancy and possession or enjoyment of the land. It was not such a possession or occupancy by the defendant, even if it existed, as would entitle her to ignore the injunction of this court.

" * * * I am of the opinion that the defendant is guilty of contempt of this court and violating the injunction of this court, and I so hold, and that she should be punished for such violation. In determining the fine I again take into consideration, just as I did at the time of the first violation in 1909, the fact that she had already remained in the custody of the sheriff a number of days, also the facts that I am informed that she has now left the State and no longer makes any claim as attorney in fact for her father, or otherwise, and therefore further violation is improbable. I am of the opinion that defendant should pay a fine of $10, and in default thereof that she be confined in the county jail until such fine is paid, and not to exceed 10 days."

All of the proceedings, as well as the evidence in the case, is returned in the record. The record sustains the conclusions of the learned judge.

The order of conviction and sentence is affirmed, with costs. The case will be remanded to the superior court of Grand Rapids for further proceedings.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.