The People *v.* Turner.

## THE PEOPLE, *ex. rel.* STEPHEN J. FIELD *vs.* TURNER, The Judge of the Eighth Judicial District.

Every court has, while engaged in the performance of its lawful functions, as an incident to its judicial character, the authority to preserve order, decency and silence in its presence ; and in such case, may apprehend and punish an offender without further examination or proof; but where the offence is committed out of court, the party is entitled to notice and to a hearing in his defence.

An order of court, adjudging a party guilty of contempt, should always show upon its face, the facts upon which the exercise of the power is based, and the adjudication is made.

Where error has occurred in proceedings, either civil or criminal, which cannot be reached by a writ of error, the writ of *certiorari* is a proper remedy to correct such error, unless some other statutory remedy has been given.

This court may issue a writ of *certiorari* to a district court for the purpose of reviewing summary proceedings, in a case where no appeal would lie.

Where an order was made by the district court of the eighth judicial district, whereby A. was ordered to be imprisoned forty-eight hours, and fined five hundred dollars, for contempt of court, without setting forth any of the facts whereon the order was based ; *Held*, that a *certiorari* should issue to remove the proceedings for review into this court : and *held further*, that a *mandamus* was not a proper remedy in such a case.

Where a party in his notice of motion served on the adverse party, asks for a specific relief, *or for such other or further order as may be just ;* the court may afford any relief compatible with the facts of the case presented.

THIS was an application for a *mandamus* to the district court of the eighth judicial district to vacate an order punishing the relator for contempt. The only facts material in the case are stated in the opinion of the court.

*Stephen J. Field*, in *propria persona.*

*By the Court.* BENNETT, J. At a term of the district court of the eighth judicial district for the county of Yuba, held on the 7th day of June last, the following order was made : " Ordered, that Stephen J. Field be imprisoned forty-eight " hours and fined five hundred dollars for contempt of court." An application is now made for a mandamus to vacate this

The People v. Turner.

order, " or for an order perpetually staying the execution of " said order, or for such other or further order as may be just." Notice of the application has been duly given, and copies of the papers upon which it is founded, served.

We have determined, in the case of *Mulford*, that this court has the power to issue the writ of *mandamus* to a district court. The point for our present consideration, therefore, is whether this case be a proper one for the exercise of that power. The order now under review shows upon its face that it was intended as an adjudication for a contempt, and this raises the question of the extent of the power of punishment for contempt, and the rules which should be observed in enforcing it.

By the common law every court has, while engaged in the performance of its lawful functions, as an incident to its judicial character, the authority to preserve order, decency and silence, without which no court could vindicate or support the laws intrusted to its administration. The power thus vested in a court is necessarily of an arbitrary nature, and should be used with great prudence and caution. A judge should bear in mind that he is engaged, not so much in vindicating his own character, as in promoting the respect due to the administration of the laws; and this consideration should induce him to receive as satisfactory any reasonable apology for an offender's conduct. The case of *Lining* v. *Bentham*, in the constitutional court of appeals of South Carolina, (2 *Bay's Rep.* 1,) contains an accurate exposition of the light in which this power is viewed. Bentham, a justice of the peace, had committed Lining for a contempt for the use of insulting and abusive language in open court. Lining sued the justice for false imprisonment and proved upon the trial that the facts set forth in the commitment were untrue, and a verdict was taken for the plaintiff. But the court of appeals set aside the verdict and determined that the commitment drawn up by the justice was conclusive evidence in his favor, and that the justice was not amenable in an action for a judicial act of this nature, but only on an indictment for oppressive or corrupt conduct. And the court remark, that one general principle, incidental to all courts, as well inferior as su-

perior, was a power to commit for contempt, either by word or deed, offered in the presence of the judge and in the face of the court, and that this power was not against *magna charta* or the law of the land, but formed a part of the common law.

But whilst the power to punish for contempt is thus arbitrary and conclusive, it by no means follows that every act which a court declares to be a contempt is in reality one. Thus in *ex parte Thatcher*, (2 *Gil. Rep.* 167,) the clerk of the court had been removed, and another person appointed in his place, and the one removed had appealed from the order depriving him of the office. The court thereupon made another order requiring the first clerk to give up the books of his office to his successor. To this order obedience was refused, and the court thereupon adjudged the offender guilty of a contempt and committed him to prison. But it was held, that the appeal taken from the order of removal operated as a *supersedeas*; that the second clerk was improperly appointed; that there could have been no contempt in refusing obedience to the order requiring a delivery of the books; and that, although the court had power to punish for a contempt in proper cases, yet the facts not being such as could constitute a contempt, the order of commitment and the imprisonment under it, were both illegal and void.

The case of *Lining* v. *Bentham*, in no respect conflicts with *Thatcher's* case. In the former, the subject matter was such that the power of the court to punish for contempt could properly attach. Its judgment was, therefore, final and conclusive, not only as to the truth of the facts, but as to the construction to be placed upon them. In the latter, the facts upon which the order of commitment was based, were of such a nature as to preclude the idea of a contempt being predicated of them; and, therefore, the judgment was not conclusive, but was subject to be reviewed. It would, indeed, be a monstrous proposition, that a court could, by adjudging an innocent and legal act to be a contempt, thereby preclude the possibility of review, and fine and imprison *ad libitum.* A distinction exists between the two classes of cases, and a distinction should be made in the applica-

The People *v.* Turner.

tion to them of the rules of law in relation to the conclusiveness of adjudications for contempt.

The 13th section of the act organizing the district courts, which is but declaratory of the common law, enacts " that such " courts shall have power to punish in a summary manner, by " fine and imprisonment, or either, for contempts offered to them " while in session, or to any process, writ, rule, or order of said " courts issued and made, or for disobeying any writ, process " or order thereof, or for obstructing or preventing the execu- " tion of the same, and that the judgments, decrees, and de- " terminations of said courts in such cases shall be final and " conclusive." It will be observed that this statute, in carrying out the doctrine of the common law, provides for two different classes of contempts; the one class, consisting of such contempts as are committed in the presence of the court during its session; and the other class, of such contempts as are committed out of court. The method of proceeding in the punishment of these two classes of contempts is different. In the former, the offender may be instantly apprehended and punished without any further examination or proof. But in the latter, which consist of matters arising at a distance, and of which the court cannot have a perfect acquaintance, or take judicial knowledge, the proceeding must be in a different way, and the party accused is entitled to be heard in his defence. (4 *Black. Comm.* 286.)

We think it follows from the distinctions above considered, that the final order of the court, by which a party is adjudged to have been guilty of a contempt, should always show, upon its face, the facts upon which the exercise of the power is based, and the adjudication made. This is certainly the general, if not the uniform practice. But the order in question does not set forth any facts, nor even show whether the proceeding was for an offence committed in the presence of the court, or at a distance from it. We are under the impression that it is, in this respect, imperfect; but it is unnecessary to express, at the present time, a definitive opinion upon this point; for we do not conceive that a *mandamus* would, in any event, be a proper

remedy. This case differs from *Mulford's* case. In that, the applicants having been "expelled from the bar," asked to be restored. In this, it is sought merely to reverse a judgment of the court. The *mandamus* must, therefore, be refused.

But the applicant asks, in his notice of motion, for such other order as may be just. We deem it proper to award a writ of *certiorari*, requiring the district court to certify the record to this court. The act of the legislature organizing this court empowers it to issue this writ in proper cases; and the argument in support of the constitutionality of the power proceeds *pari passu* with that in support of the power to issue the writ of *mandamus*. (*See Mulford's case.*) The writ of *certiorari* is used, at common law, for the purpose, amongst other things, of removing summary proceedings, and the order made thereon, from an inferior tribunal into the court of king's bench, where such proceedings and order may be either quashed or confirmed. (4 *Black. Comm.* 272, 320.) And this writ sometimes lies in cases, which the inferior jurisdiction is empowered *finally* to hear and determine. (2 *Haw. P. C.* 286; *Rex* v. *Morely*, 2 *Burr.* 1040; *Hartley* v. *Hooker, Cowp.* 524.) As a general rule, at common law, where error has occurred in proceedings, either civil or criminal, which cannot be reached by a writ of error, the writ of *certiorari* is a proper remedy to correct such error, unless some other statutory remedy has been given. A *certiorari* will, therefore, issue returnable at the next term of this court; and in the mean time all proceedings upon the order will be stayed upon the applicant's executing and filing with the clerk of the county of Yuba a bond, in the penalty of one thousand dollars, with two sureties who shall justify by affidavit in double that amount, conditioned that the applicant shall abide the final decision of this court.