THE STATE OF MISSOURI EX.REL. D. C. THATCHER, *v.* W. H. HORNER, JUDGE, Respondent.

June 26, 1884.

1. CONTEMPT OF COURT. — It is contempt of court to refuse to obey any order of the court which it has jurisdiction to make, irrespective of whether such order is erroneous.

2. —— Every court of record has the power to punish, by fine and imprisonment, wilful disobedience of any process issued or order made by it.

3. —— MANDAMUS. — A final order of court refusing to punish a person guilty of wilful disobedience of its orders, can not be revised under a writ of *mandamus.*

4. —— APPEALS. — In a remedial proceeding for contempt, an appeal will lie from a final order by which the court ends the proceeding and exhausts its jurisdiction.

5. MANDAMUS. — *Mandamus* will not be awarded where there is an adequate remedy, by appeal or otherwise, open to the complaining party.

6. —— *Mandamus* will not lie to compel the circuit judge to issue its process commanding third persons to obey the decree of the circuit court, where the court has made a final order refusing such relief.

APPLICATION for a writ of *mandamus.*

*Judgment for the respondent.*

DYER, LEE & ELLIS, and KRUM & JONAS, for the relator.

WILBUR F. BOYLE, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This is an application for a writ of *mandamus* to compel the respondent, who is a judge of the circuit court of the city St. Louis, to compel the officers of a corporation to perform a decree previously rendered by the said court, requiring them to transfer on the books of the corporation certain shares of stock to the relator and to issue to him a certificate therefor. The question for decision arises upon a demurrer to the petition. The petition recites the making of the decree, the service of a copy of it upon Edward P. Barrett, president, and William C. Jones, secretary of the corporation, their refusal to obey the same, the issuing by the

court of an order requiring them to show cause on a day named why they should not be punished for contempt in disobeying the same, and the service of such order upon the said Barrett and Jones. It then recites that Barrett and Jones made a return to this order which was "frivolous and insufficient in point of law, and untrue in point of fact." It then proceeds to set forth wherein the return of Jones, and also wherein that of Barrett was frivolous in point of law and untrue in point of fact, and it then concludes with this averment: "Said relator herein further avers, that the said defendant herein, when he came to discharge said rule for contempt as aforesaid, assigned as the ground for his ruling that the corporation had not kept proper books, and that for that reason he did not see how he could interfere; but that, notwithstanding the said insufficiency of the said return to said order, and notwithstanding the return of the said Barrett and Jones did not show any just or proper cause why they should not be compelled to execute the said decree of said court, yet the said defendant did wilfully refuse to compel the said officers of said corporation to obey and comply with the said decree, and has hitherto refused and now refuses to cause the said decree to be executed and properly enforced in conformity with and in furtherance of the lawful rights of the said plaintiff. Wherefore said plaintiff, relator herein, states that he is without other remedy in the premises, and respectfully prays that a writ of *mandamus* be issued from this court to the defendant, judge of said circuit court as aforesaid, commanding him to compel the said parties, officers of said corporation as aforesaid, to comply with and obey said decree or show cause why the enforcement of said decree should not be required at his hands."

If the circuit court had jurisdiction to render the decree set out in the petition, it was a contempt of court for the officer of the corporation to disobey it, no matter how improvident or erroneous the making of it may have been.

*Partington* v. *Booth*, 3 Meriv. 149, per Lord Eldon, C.; *Sullivan* v. *Judah*, 4 Paige, 442; *Stempson* v. *Putnam*, 41 Vt. 238; *Moat* v. *Nolbein*, 2 Edw. (N. Y.) Ch. 188; *The People* v. *Bergen*, 53 N. Y. 404, 410. Compare *Franklin* v. *Smith*, 49 Ga. 112; *Penn* v. *Brewer*, 12 Gill & J. (Md.) 113. But if the court had no jurisdiction to render the decree, no contempt was committed in disobeying it. *Perry* v. *Mitchell*, 5 Den. (N. Y.) 537; *The State* v. *Harper's Bridge Co.*, 16 W. Va. 364; *Harris* v. *Haines*, 35 Mich. 138. Compare *The People* v. *O'Neill*, 37 Cal. 109; *Swinburn* v. *Smith*, 15 W. Va. 500; *The People* v. *Simonson*, 10 Mich. 335. Every court of record in this state has power to punish as for a criminal contempt wilful disobedience of any process or order lawfully made by it. Rev. Stats., sect. 1055. And "when a judgment requires the performance of any other act than the payment of money, a certified copy of the judgment may be served upon the party against whom it is given and his obedience thereto required. If he neglect or refuse, he may be punished by the court as for a contempt, by fine or imprisonment, or both, and, if necessary, by sequestration of property." Rev. Stats., sect. 3728. The case stated in the petition seems to fall directly within these statutory provisions; and if the court has rendered a decree requiring the officers of a corporation to make a transfer of stock, and they refuse to obey it, it is unquestionably the duty of the court, having regard to the rights of the plaintiff, to the respect due to the administration of justice and to its own dignity, to proceed to enforce the decree by imprisonment as for a criminal contempt. Such an imprisonment has none of the elements of imprisonment for debt.

But while, assuming, as we must for the purpose of our present decision, the facts stated in the petition to be true, the conclusion of the court in the proceeding as for a contempt would seem to have been clearly erroneous, it does not follow that we can revise and correct that decision by

*mandamus.*  If the respondent had, on seeing the return of
the respondents in the contempt proceeding, merely re-
fused to proceed further, we  could, and would, by our writ
of *mandamus*, compel him to proceed ; but upon well set-
tled grounds we could not direct him how to proceed, nor
command him what judgment to render.   But it sufficiently
appears from this petition that he did proceed, and that he
rendered a judgment discharging the respondents in the
contempt proceeding.   What we are now asked to do is
therefore nothing less than to reverse this judgment by our
of writ *mandamus* and to command the respondent to ren-
der a different judgment.   This would make the writ of
*mandamus* a mere substitute for an appeal or writ of error.

An order imposing a sentence of fine or imprisonment
upon a person for a contempt of court is in the nature of a
*judgment* convicting him of a criminal offence ; and when
he is imprisoned upon such an order, he is said to be
imprisoned *in execution.*   De Gray, C. J., in *Crosby's
Case*, 3 Wilson, 188 ; *Ex parte Kearney*, 7 Wheat. 345.
See also *Ex parte Goodin*, 67 Mo. 637.   Such an order,
in order to be valid, can only be pronounced where the
alleged contempt took place out of court, at the end of
a proceeding which, though summary in its nature, em-
braces those essentials of a judicial proceeding which are
designated by the term, " due process of law."   There
must be an affidavit or the return of an officer, sufficient in
substance, informing the court that a contempt has been
committed, and stating the facts upon which such conclu-
sion is predicated.   *Re Judson*, 3 Blatchf. (U. S.) 148 ;
*Murdock's Case*, 2 Bland Ch. (Md.) 461, 486 ;  *Ward v.
Arenson*, 10 Bosw. (N. Y.) 589 ; *Rugg v. Spencer*, 59
Barb. (N. Y.) 383, 397 ; *Whittem v. The State*, 36 Ind.
196, 217 ; *Wilson v. The Territory*, 1 Wyom. T. 155 ;
*Matter of Davis*, 81 N. C. 72 ; *The State v. Blackwell*, 10
S. C. 35 ; *Batchelder v. Moore*, 42 Cal. 412, 415 ; *Young
v. Cannon*, 2 Utah T. 560, 594 ; *Phillips v. Welch*, 13
Nev. 158, 165.   The accused is entitled to notice and to

an opportunity to be heard in his defence. *The State* v. *Matthews*, 37 N. H. 450, 454; *The People* v. *Turner*, 1 Cal. 152; *Sommersett* v. *Zellers*, 2 Halst. (N. J.) 31; *Ex parte Langdon*, 25 Vt. 680; *Worcester* v. *Truman*, 1 McLean (U. S.), 483; *Ex parte Ireland*, 38 Texas, 344. And a judgment of conviction without according to him this right is absolutely void. *The State* v. *Judges*, 32 La. An. 1256. The court proceeds after notice and upon inquiry; it hears before it condemns; it renders its judgment upon deliberation. While dispensing with formality of pleading, the ordinary rules of evidence applicable in criminal proceedings apply. *The State* v. *Gilpin*, 2 Del. Ch. 25; *Bates' Case*, 55 N. H. 325. Where, as in this case, the proceeding is instituted by a party to enforce a civil remedy, it assumes the essential characteristics of an adversary proceeding, and the court does not, as a general rule, confine its inquiry to the answers of the respondent to interrogatories, but it hears evidence produced by both parties. *Underwood's Case*, 2 Humph. (Tenn.) 46, 49; *Childrens* v. *Saxby*, 1 Vern. 207; *Magennis* v. *Parkhurst*, 4 N. J. Eq. (3 Gr.) 433; *Emery* v. *Bowen*, 5 L. J. Ch. (N. S.) 349; *The State* v. *Harper's Ferry Bridge Co.*, 16 W. Va. 864, 873; *Rutherford* v. *Metcalf*, 5 Hayw. (Tenn.) 58, 61; *The State* v. *Mathews*, 37 N. H. 450, 455; *Smith* v. *Smith*, 14 Abb. (N. Y.) Pr. 130, 468; *Crow* v. *The State*, 24 Texas, 12, 14; *Henry* v. *Ellis*, 49 Iowa, 205. The decision of the court, by whatever name it be called, and whether it be in favor of or against the accused, possesses the essential characteristics of a final judgment dispositive of a substantial right. This being so, whilst it is a rule of common-law procedure that an appeal does not lie from a judgment in a proceeding for a criminal contempt, yet it is generally held that where the proceeding is, as in this case, a remedial proceeding as for a contempt, the final judgment or order by which the court ends the proceeding and exhausts its jurisdiction is subject to revision by appeal.

*Romeyn* v. *Caplis*, 17 Mich. 449 ; *McCredie* v. *Senior*, 4 Paige, 378 ; *Spaulding* v. *The People*, 10 *Id*. 264 ; *s. c.* on appeal, 7 Hill, 302, and 4 How. Pr. 21 ; *The People* v. *Sturtevant*, 9 N. Y. 209 ; *Ballston Spa Bank* v. *Marine Bank*, 18 Wis. 490 ; *Shannon* v. *The State*, 18 Wis. 604 ; *The People* v. *Hooley*, 48 Barb. 564 ; *Forbes* v. *Willard*, 67 How. Pr. 193 ; *Ludlow* v. *Knox*, 7 Abb. Pr. (N. S.) 411 (in New York Court of App. 1869) ; *Brinkley* v. *Brinkley*, 47 N. Y. 40 ; *Haines* v. *Haines*, 35 Mich. 138 ; *Matter of Davis*, 81 N. C. 72 ; *Re Pierce*, 44 Wis. 411, 432 ; *Matrons* v. *Kearney*, 79 N. Y. 496 ; *Witter* v. *Lyon*, 34 Wis. 564 ; *Hundhausen* v. *Insurance Co.*, 5 Heisk. (Tenn.) 702. There can be no question that an appeal lies from such a judgment or order in this state. Under our statute " every person aggrieved by any final judgment or decision of any circuit court in any civil cause, or by any such judgment or decision of the St. Louis Court of Appeals, from which an appeal is not prohibited by the constitution, may make his appeal to the court having appellate jurisdiction of such judgment or decision." Rev. Stats., sect. 3710. Clearly, such an order is a " final judgment or decision " " in a civil cause ; " and whether it be the subject of appeal can not be determined by the question whether it was rendered in favor of the one party to the controversy or the other. If it be a judgment convicting the defendant of the contempt charged and imposing upon him a punishment therefor, it is a final judgment by which he may be aggrieved, and which may be the subject of an appeal by him. If, as in this case, it be a judgment discharging the accused from prosecution, it finally disposes of the right demanded by the other party to the civil proceeding, and it is a judgment by which he may be aggrieved within the meaning of the statute. It is the constant practice in this state to grant appeals from orders made upon motions in civil proceedings. *Wise* v. *Darby*, 9 Mo. 131 ; *Slagel* v. *Murdock*, 65 Mo. 522. And it is held that such an appeal

lies whenever an order overruling a motion is a complete disposition of the subject-matter of the motion. *Gale* v. *Michie*, 47 Mo. 326 ; *Straat* v. *Rinkel*, *ante*, p. 115.

Nor is there in this case any technical difficulty in the way of granting an appeal to the prosecutor in the proceeding as for contempt, on the ground that he is not a party to the record ; for, although in these proceedings, according to the usual practice, the proceeding is entitled in the name of the state against the accused person after an attachment has issued (*Matter of Bronson* v. 12 Johns. (N. Y.) 459 ; *Folger* v. *Hoagland*, 5 Johns. (N. Y.) 235 ; *The People* v. *Farris*, 9 Johns. (N. Y.) 160 ; *The United States* v. *Wayne*, — Wall. (U. S.) 134 ; *The First Congregational Church* v. *Muscatine*, 2 Iowa, 69, per Isbel, J. ; compare *DuBois* v. *Phillips*, 5 Johns. (N. Y.) 235 ; *Baltimore, etc., Railroad Co.* v. *Willing*, 13 Gratt. (Va.) 57 ; *Wood* v. *Webb*, 3 T. R. 253 ; *Rex* v. *The Sheriff of Middlesex*, 3 T. R. 133 ; *Wenslow* v. *Mayson*, 113 Mass. 411, 430 ; *McDermott* v. *Clary*, 107 Mass. 501, 504) ; yet this practice is by no means universal ; there is good authority for the rule that the proceedings should be entitled throughout in the name of the parties to the civil action. *Stafford* v. *Brown*, 4 Paige, 360 ; *The People* v. *Craft*, 7 Paige, 325 ; *Haight* v. *Lucia*, 36 Wis. 355. But if there were an inflexible rule requiring the proceeding to be entitled in the name of the state after the attachment had issued, this rule would interpose no obstacle in the way of the right of the plaintiff to an appeal in a case like the present, where the final judgment which denies to the plaintiff the remedy which he seeks is given before the issuing of an attachment ; and for the further reason that our statute, above quoted, prescribing who may appeal, gives the right of appeal to any person aggrieved by the judgment, and does not limit the right to those who are parties on the face of the record.

The writ of *mandamus* is never awarded where any other and adequate remedy is open to the party complaining. It

is never awarded where such party has a remedy by appeal or writ of error. We can not by this means summon a judge of the circuit court to the bar of this court to answer why he rendered a certain judgment, merely because it is alleged to have been rendered upon a showing which was frivolous in point of law and untrue in point of fact. The mere fact that we may regard his judgment as erroneous does not give us jurisdiction to proceed to correct it in this way. It is no argument that the remedy by appeal is not as speedy as the remedy by *mandamus*. For if this argument were allowed to prevail the writ of *mandamus* would soon become a substitute for an appeal. Our docket, instead of being made up chiefly by appeals and writs of error, would be crowded by petitions for *mandamus*, and the proceeding by appeal would in turn become the more speedy remedy. Instead of proceeding in an orderly way to revise the judgments of the circuit courts upon the full records of their proceedings, certified to us in bills of exceptions, we should in every case put the circuit judge upon trial, and put upon him the onerous burden of employing counsel to defend at our bar his judicial action. Under such a system the office of circuit judge would become intolerable; but what would be still more incongruous and absurd, we should proceed to correct his errors without his record before us, and with only one of the parties to the proceeding before us.

In this case we are asked to go to the length of commanding a judge of the circuit court to arrest and imprison two persons who are not even parties to the proceeding before us, thus entirely ignoring the rule that a party must be heard before he is condemned. If we were to do this, the order of commitment of the circuit judge, though made under the compulsion of our writ of *mandamus*, would be merely void, and no court would hesitate to discharge the prisoners on *habeas corpus*.

We have thus made our views clear; but it is proper, be-

fore closing, to notice some decisions of other courts upon this question, to which our attention has been invited.

In *Ex parte Chamberlain* (4 Cow. 49), a *mandamus* was asked for in the supreme court of New York to compel the justices of the general sessions of the peace to attach and punish a certain person for non-attendance in that court as a witness. The court refused the application, on the ground that the person was not bound to attend as a witness without the tender of his fee for such attendance, and is reported to have said: "They should have denied this motion at once, on the ground that it sought for a *mandamus* to compel an inferior court to punish for a contempt, had the matter rested there; for every court must be the sole judge whether a contempt has been committed against it or not; but as the private rights of an individual were also implicated, they had for that reason looked into the merits." It is perceived that this case is no authority for the contention of the relator; because the *mandamus* was asked to compel the issuing of an attachment, which is merely an initiatory step in a proceeding for a contempt, and is not an adjudication. *Ex parte Mason*, *ante*, p. 41.

In *Ortman* v. *Dixon* (9 Cal. 23), a decree had been rendered in a chancery suit enjoining the defendants from doing a certain act. Pending a motion for a new trial, they had violated the injunction, and the plaintiffs had applied for an attachment against them for a contempt of court, which was refused, upon the ground that the pendency of the motion operated as a suspension of the injunction. The supreme court held that this view was erroneous, and awarded a peremptory *mandamus*. It appears that this case resembles the preceding one, in that the *mandamus* was asked for to compel the court to issue the initial process in a contempt proceeding, not to direct the court what judgment to render upon the return of such process, much less to reverse a judgment already so rendered.

In the case of *Kimball* v. *Morris* (2 Metc. (Mass.) 573),

it was held that a *mandamus* might issue to compel a judge of probate to arrest and imprison an insolvent debtor, upon its being proved or admitted that the facts required by the statute to be shown to such judge, upon which he was required to order such an arrest and imprisonment, were made to appear to him ; but not if such facts were not made to appear. This is the strongest case which has been cited for the relator. The question whether any other remedy was open to the creditor was not considered, but it seems to have been taken for granted that there was not.

On the other hand, in *The People* v. *Turner* (1 Cal. 152), a *mandamus* was applied for to vacate an order which had been made punishing the relator for a contempt; and it was held that the *mandamus* would not lie, because the error, if any, could be reached and corrected by *certiorari*. A *mandamus*, the court ruled, would not in any event be the proper remedy, because it merely sought to reverse a judgment of an inferior court. This case is entirely in point in the case at bar, the only distinction being that there the court adjudged the party to be in contempt, and here the court has adjudged the party not to be in contempt. This, however, is a distinction without a difference — the principle being that the court in each case has rendered a judgment, and that a *mandamus* is not a proper writ to bring up and reverse a judgment of an inferior court.

In *Ex parte Briggs* (64 N. C. 202), a *mandamus* was asked for to restore an attorney who had been disbarred for an alleged contempt of a district court. This remedy was refused on the ground that a *certiorari* in the nature of a writ of error lay, under the practice in that state, to bring up the whole proceeding for review. And the cases of *Ex parte Bradley* (7 Wall. 376) and *The People* v. *Justices* (1 Johns. Cas. 181), where a contrary conclusion was reached, were distinguished, on the ground that under the system of procedure in vogue in those jurisdictions, there was no other remedy. There can be no question that the North Carolina

case was decided rightly on this point, and that our courts would so decide under our system; because here, if an attorney is tried and disbarred, an appeal will lie. *In re Bowman*, 7 Mo. App. 569.

We have been referred to the case of *The People* v. *Oelbricks* (5 Wend. 114); but that case is not in point, because there the *mandamus* was asked for to vacate an order granting a new trial. It is unnecessary to say whether or not the principles there laid down meet with our approval.

Because the purpose of this proceeding is to control the judicial discretion of a judge of an inferior court, to compel him to set aside a judgment which he has rendered and to render a different judgment; and because the relator, if aggrieved by the judgment which he has rendered, has an adequate remedy by appeal, we hold that the demurrer must be sustained and judgment entered for the respondent. It is so ordered. All the judges concur.