# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1895.

---

GLOVER v. AMERICAN CASUALTY INSURANCE AND
SECURITY COMPANY, Appellant.

Division Two, October 11, 1895.

1. **Practice:** INSPECTION OF DOCUMENTS: CONTEMPT: APPEAL. An order of the trial court striking out defendant's demurrer and denying it the right of further defense, for the reason that it was in contempt for not complying with an order of court to produce a written instrument for inspection, is, after final judgment, reviewable on appeal.

2. **Written Instrument:** INTERPRETATION. Where an instrument is susceptible of two interpretations, one in favor of its legality, and the other against it, the former should be preferred.

3. **Personal Conduct:** PRESUMPTION. Where a person's conduct is equally consistent with innocence or guilt, the presumption is in favor of innocence.

(173)

4. **Practice**: INSPECTION OF DOCUMENTS: CONTEMPT.   Where, while a demurrer to the petition is pending, the court, on a motion under Revised Statutes, 1889, section 2181, made an order requiring defendant to produce a written contract for inspection, and defendant made return to the motion that the contract was destroyed, it was error to adjudge defendant in contempt and to deny it the right of further defense to the suit merely because the return was consistent with a willful destruction of the contract after the service of the order.

5. ————: ————: ————: ABUSE OF DISCRETION.   The refusal of the court to permit defendant, after making the foregoing return, to show that the contract was destroyed before the action was begun, was an abuse of its discretion.

*Appeal from St. Louis City Circuit Court.*—Hon. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*P. Taylor Bryan* for appellant.

(1) The proceeding for the production of books and papers for inspection takes the place of a bill of discovery in equity, and is only granted where the bill of discovery would lie.  *Larimore v. Bobb*, 114 Mo. 446; *Arnold v. Water Co.*, 26 Atl. Rep. 55.  (2) The order of court compelling the defendant to produce for the inspection of the plaintiff the contract between the defendants and Beecher, Schenck & Benedict was improvidently made, and was erroneous.  *First.*  At the time said order was made there was no issue of fact before the court.   There was no pleading to the merits by the defendant, and, consequently, it could not be determined *what* evidence would "relate to the merits of the action or defense."  *Thompson v. Railroad*, 9 Abb. N. S. 230; *Palen v. Johnson*, 18 Abb. Pr. 304. *Second.*  To entitle a person to inspection of papers it must appear that they relate to the petitioner's own case.   Neither party is allowed a discovery to pry into his opponent's case, or to rebut an anticipated case of

his opponent. Thompson on Trials, secs. 746,749, 753; *Sanger v. Seymour,* 42 Hun, 641; *Andrews v. Townshend,* 16 J. & P. 162; *Downe v. Nettleton,* 61 Conn. 593; *Lester v. People,* 23 N. E. Rep. 387; *Railroad v. Tel. Co.,* 14 S. E. Rep. 689. *Third.* The provisions of the statute do not permit an inspection of papers of an adversary in cases of tort, especially libel. Thompson on Trials, sec. 744; *Updyke v. Marvel,* 18 Abb. Pr. 266; *Bailey v. Dean,* 5 Barb. 297; *Moot v. Ice Co.,* 2 Abb. N. C. 143. Pomeroy on Equity [2 Ed.], sec. 197, p. 239. *Fourth.* On the contrary, the right to inspection before the trial is confined to cases where parties have a common interest in the evidence called for. *Raub v. Vanhorn,* 133 Pa. St. 573; *Lester v. People,* 23 N. E. Rep. (Ill.) 387. (3) Any uncertainty as to the fact of intentional or willful disobedience of an order of court inures to the benefit of the one accused of such disobedience, and it should appear beyond a reasonable doubt that the accused willfully disobeyed the order of the court before he should be adjudged in contempt. *Potter v. Low,* 16 How. Pr. 549; *Ackroyd v. Ackroyd,* 2 Abb. Pr. N. S., 380. (4) The order of the court striking defendant's demurrer from the files was a harsh, unusual and severe punishment, and was not warranted by law. *Woods v. De Figaniere,* 25 How. Pr. 522; *Peel v. Peel,* 50 Iowa, 521; *Rice v. Ehele,* 55 N. Y. 518; R. S. 1889, secs. 2177–2181. If the return of the defendant constituted a criminal contempt, and the action of the court was designed (as it apparently was) to vindicate its authority and to punish the defendant, then the proper punishment was that pointed out by the statutes, viz., fine or imprisonment, and this punishment was exclusive of any other. R. S. 1889, secs. 3261, 3262, 3263; *Ex Parte Crenshaw,* 80 Mo. 447; *Wilson v. State,* 57 Ind. 71; *Woods v. De Figaniere,* 25 How. Pr. 522; *Ex Parte Robinson,* 19 Wall.

505.  (5) Whether the act charged was a criminal contempt or a civil contempt, yet, since the alleged contempt was not committed in the immediate view and presence of the court, the court should have notified the accused and given it an opportunity to have purged itself of the contempt.  R. S. 1889, sec. 3263; *Greene County v. Kindred Rose*, 38 Mo. 390; *Peel v. Peel*, 50 Iowa, 521; *Russell v. French*, 67 Iowa, 102; *Wilson v. State*, 57 Ind. 71; *Bank v. Schermerhorn*, 38 Am. Dec. 551; 5 Criminal Law Magazine, p. 497, sec. 14.

*Chester H. Krum* for respondent.

(1) The order requiring appellant to produce the contract with Beecher, Schenck & Benedict was neither erroneously nor improvidently made.  The statute does not require that the issues shall have been joined. Upon a showing by plaintiff or defendent, that documents in possession of the adverse party will afford evidence, the trial court is vested with discretion to order inspection.  Instead of the case not being at issue being an obstacle to the exercise of that discretion, it rather affords the greater reason for the order.  *Miller v. Mathew*, 5 How. Pr. 160; *Stanton v. Insurance Co.*, 2 Sandf. Sup. Ct. 662.  (2) The right of a plaintiff to discovery in support of his own case is not to be abridged, as to any particular discovery, by the consideration that the matter of such particular discovery may be evidence of the defendant's case in common with that of the plaintiff.  Wigram on Discovery, 260; *Burrell v. Nicholson*, 1 Myl. & Keen, 680.  (4) A motion to set aside such an order after it has been made, does not operate as an exception to the order when it was made.  These rules are fundamental.  *Stearns v. Railroad*, 94 Mo. 317; *Klotz v. Perteet*, 101 Mo. 213; *State v. Anderson*, 96 Mo. 241; *Keating v. Hannenkamp*, 100

Mo. 161. (1) The order of the trial court striking the demurrer from the files was warranted by the law and justified by the situation. *Ex Parte Crenshaw*, 80 Mo. 447. (6) The action of the lower court in adjudging appellant guilty of contempt is not open to review. This proposition assumes that the court had jurisdiction to make the order. If it had, there is no review. *Ex Parte Murphy* (Sup. Ct. Mo., Oct. Term, 1894); *State v. Galloway*, 5 Col. 326; *State ex rel. v. Tipton*, 1 Blackf. 166; *Mitchell's* case, 12 Abb. Pr. 249. (7) In other words, the facts going to show the contempt, as found by the trial court, will not be reviewed on appeal. If on appeal it appears that the court below had jurisdiction, the appellate court will not consider whether the order should or should not have been made. *Tolman v. Jones*, 114 Ill. 147; *Cossart v. State*, 14 Ark. 538; *McLaughlin's* case, 5 W. & S. 276; *Anderson v. Dunn*, 6 Wheat. 204; *Kearney's* case, 7 Wheat. 38. (8) Full opportunity having been given to appellant to purge itself of the contempt, the trial court found that its very attempt to so purge itself was more "resentful than respectful." It did not clear itself "by its answers." *Re May*, Fed. Rep. 737; *Re Wooley*, 11 Bush, 95; *People v. Wilson*, 64 Ill. 195.

GANTT, P. J.—Plaintiff instituted this action for libel against the defendant in the circuit court, city of St. Louis, returnable to the April term, 1893, asking for $150,000 damages. The basis of the action was that defendant in advertising its business issued a pamphlet containing a list of embezzlers, in which plaintiff's name appeared.

*Before there was any pleading to the merits on the part of the defendant, plaintiff obtained an order for defendant to produce for inspection a contract between defendant and*

VOL. 130 mo—12

*certain third persons, Beecher, Schenck & Benedict, general agent of the defendant.*    In his application the plaintiff alleged that said contract would disclose the extent of the authority of Beecher, Schenck & Benedict to act for defendant; that it therefore contained evidence relating to the merits of the defense, and that without the knowledge of its contents the plaintiff might be surprised at the trial of the case.    The court thereupon made an order on defendant to produce said contract for the inspection of plaintiff, or show cause within ten days why it should not do so.

Thereafter defendant made its return and stated that the contract had been "by mutual consent annulled, vacated, and set aside, on or about the first day of January, 1892; that there were but two contracts in existence; one the duplicate of the other, one of which was retained by the company, the other retained by Beecher, Schenck & Benedict.    Both of these contracts have been destroyed and they are not now in existence and therefore it is impossible for this company to produce it for the inspection of the court."

Thereafter, having given written notice, the plaintiff made an oral motion asking the court to declare said return insufficient, and that the defendant be adjudged in contempt, and that its pleading be stricken out and that judgment by default be entered against the defendant.    The court took this motion under advisement, and thereafter sustained it, and filed an opinion in which it stated:  "The return is insufficient; *it is entirely consistent with the willful destruction of the paper* after the order for its forthcoming was made, and for the purpose of evading the order."

Thereupon the court, without any further notice whatever, adjudged the defendant guilty of contempt, and without permitting defendant to purge itself of contempt, or to show that there was no intentional dis-

respect, and without permitting defendant to amend its return, proceeded to punish the defendant, and, in the judgment entered sustaining plaintiff's motion, the following language was used: "And it appearing to the court that the defendant is a nonresident corporation, and beyond the reach of the process of this court, so that the usual punishment prescribed for such offenses is unavailing, it is ordered that for its said offense the demurrer of the defendant be stricken out, and judgment by default be entered and a writ of inquiry of damages be awarded."

On the same day that said judgment was rendered, defendant by oral motion moved the court to set aside its said order and permit defendant to amend its return. The court summarily overruled this motion, and refused to permit defendant to amend its return. Thereafter defendant filed its written motion to the same effect, and in support of said written motion filed the affidavit of Midgley, president of the defendant corporation, and the person who had sworn to the return of the original order, in which affidavit it was set out that defendant was advised by counsel that it had a good and valid defense; it was further stated that defendant had not circulated said libel, nor authorized its circulation, and immediately after learning of the existence of the pamphlet complained of took all possible steps to destroy the same and to suppress its circulation, and that the number circulated, if any, was very small.

It further stated, in said affidavit, that what the court construed as an evasion in said return was due merely to an oversight, and that in fact said contract had been actually "torn up and destroyed long prior to the date on which the court ordered the defendant to produce it for the inspection of the plaintiff. And because of such destruction the defendant was not at the time said order was made able to produce it, and

that it was the purpose and intent of affiant in making the return to said order to fully set forth the fact of such destruction" as the cause and reason of defendant's inability to comply with said order, and prayed that said affidavit be taken and considered as an amended return to the original order for the inspection of the said contract.

The defendant also filed the affidavit of Robert Sewell, Esq., New York, who was general counsel for the defendant, in which he stated that he had himself prepared the return to the original order of the court, and that he had intended to draw it "in accordance with the fact then and there stated to him by said Wm. E. Midgley that the contract referred to in said order of court had been annulled and actually torn up and destroyed in the month of January, 1892, and had not been in existence since the last mentioned date, and that he had intended said return to disclose, and, until he learned of the judgment of the court, believed it did disclose that the actual destruction of the contract had occurred contemporaneously with the annulment thereof."

Plaintiff filed certain affidavits in opposition to said motion to revoke the order striking out defendant's demurrer. The court again overruled defendant's motion to set aside the default and filed the following opinion which is duly preserved as part of the record:

"Whether the fault of the defendant for which judgment by default was entered against it was willful or only accidental, still it was the defendant's own fault, and before it can expect relief from the consequence it should show a willingness to act with fairness in reference to the document that was the subject of dispute. In this motion to set aside the default, and in the affidavits in support of it, the defendant has

with seeming care avoided alluding to the contents of
the instrument which it was required to produce, yet
asks to be put in a position as favorable in all respects
as if it had committed no fault, a position in which it
could take shelter in the concealment of that which it
was ordered to disclose.  If in preparing the motion
and affidavits in support of it the defendant had enter-
tained a disposition to comply as far as possible with
the original order of the court—to comply with its
spirit, if impossible to do so with its letter—there
would have been a disclosure of the contents of the
paper, or a fair reason for the absence of such.  To
say that the order did not call for the contents of the
paper, is the suggestion of a mind determined to do
nothing that it could safely avoid doing in the way of
obeying the court's order.  It might well be said of the
original return that the contents of the paper were not
called for, but to make that statement on the motion
to set aside its default does not strengthen the motion
in so far as it is addressed to the discretion of the
court.

"When the return was in, and a motion to adjudge
it insufficient was made, the defendant's counsel was
present and his attention was distinctly called to what
was claimed to be a fatal omission.  Upon full argu-
ment, counsel for defendant contended that the return
was sufficient as it was, gave no intimation of a desire
or willingness to amend it, but submitted it for judg-
ment.  The court took it under advisement and so
held it for several days, and not until the judgment
was actually pronounced was any suggestion of amend-
ment, and even then it was only in the shape of a
request by the defendant's counsel that the court sus-
pend the entering of the judgment—for a sufficient
number of days to enable the counsel to communicate
with defendant in New York to see if it desired to

amend the' return.   The refusal of the court to grant the request is the only foundation for the statement in the motion that the court allowed the defendant no opportunity to amend the return.   To allow that sort of practice would be to encourage parties in such case to experiment to see how close they could come to disobeying the order of the court and yet escape the consequence.   No court could maintain its respect or authority if it suffered that practice.

"The truth is, as it seems to me, the defendant from the beginning had not appreciated the situation, When the application for the order to produce the paper was first made, the defendant's counsel was in court and suggested that the court ought to hesitate to make the order for the reason that the defendant was a nonresident corporation and if it should refuse to obey the order the court could not enforce it.   It is not unlikely, therefore, that defendant's counsel in New York entertained the same view and possibly that idea in a measure influenced the character of the return. Since, as defendant's counsel suggested, the defendant being a nonresident might stand over the line and defy the court's authority, the only means the court had of coercing obedience to its order was to strike out the defendant's plea.   This having been done, the defendant still not complying with the order, neither complying as near as possible, by not disclosing the contents of the paper, files its motion to set aside the default alleging therein that the court is punishing the defendant for being a nonresident and then gravely averring that the mere fact of being a nonresident is not a violation of law or good morals, but on the contrary is expressly sanctioned by the law of this state and of the United States.

"The motion is itself couched in language more resentful than respectful.   It is overruled."

The case was thereafter submitted to a jury upon the following instructions:

"The court instructs the jury that in assessing damages in favor of plaintiff they will award such sum as in their judgment will compensate the plaintiff for the damages sustained by him and they may add such further sum by way of punishment for the libel, as they may deem proper, not exceeding, however, the amount sued for by the plaintiff.

"And in estimating the damages, as above indicated, the jury may consider the nature of the charge complained of, the capital and resources of the defendant, the extent of the circulation of the libel, and all the circumstances of the case."

To the giving of which instruction the defendant at the time excepted.

The court gave the following instruction at the instance of the defendant:

"The jury are instructed that the defendant has been precluded by an order of the court, heretofore made, from making a defense to this suit. Hence the jury must not infer from the failure of defendant to set up and maintain a defense, a voluntary admission by the defendant of any liability herein, nor shall the jury consider the absence of any pleading or defense herein as a ground or reason for enlarging the amount of damages against defendant."

On the same day, to wit, November 13, 1893, the jury returned the following verdict:

"We the jury assess the plaintiff's damages at twenty-seven thousand dollars ($27,000.)"

After unsuccessful motions for new trials and in arrest of judgment, defendant appealed to this court.

I.   Preliminary to any discussion of the propriety of the action of the learned circuit court in striking out defendant's demurrer and denying it the right of

further defense upon its return to the court's order to produce the contract between defendant and its agents Beecher, Schenck & Benedict, we must first determine whether said order and the refusal to set it aside, are reviewable by this court. Counsel for plaintiff insists that they are not. If, as plaintiff concedes, the court's action was, manifestly, not taken as a punishment for a criminal contempt but was merely entered for the purpose of enforcing a civil right or remedy, then we have no doubt that this action of the circuit court is reviewable on appeal, coming as it does after a final judgment. R. S. 1889, sec. 2246.

It is true that every superior court of record at common law is the sole judge of contempts offered or committed in its presence against its dignity and authority and may punish the same summarily and no other court can review its decisions in such cases, unless an appeal is expressly allowed by statute, but this principle is applicable only to those direct contempts which interfere with the orderly and effective administration of justice by judicial proceedings in which appeals if sanctioned would seriously impair the authority of the court against which they are committed and deprive it of that respect without which it is impotent to perform its high function, and has not obtained in constructive contempts as in the case at bar. In many cases similar to this the right of appeal has long been recognized and sanctioned in many jurisdictions and the necessity therefor we think can hardly be questioned if appeals are allowable in any case. *Greene Co. v. Rose,* 38 Mo. 390; *State v. Horner,* 16 Mo. App. 195; *Lester v. People,* 23 N. E. Rep. 387; *State v. Schneider,* 47 Mo. App. 669; *State ex rel. v. District Court,* 42 N. W. Rep. 598; *Myers v. State,* 22 N. E. Rep. 43; *Romeyn v. Caplis,* 17 Mich. 449; *Sudlow v. Knox,* 7 Abb. Pr. N. S. 411 *Brinkley v. Brink-*

*ley*, 47 N. Y. 40; *In re Daves* 81 N. C. 72; *Watrous v. Kearney*, 79 N. Y. 496.

II.   The defendant presents a strong case.  It had been summoned to court and lodged a demurrer to the plaintiff's petition.   Prior to any adjudication upon the issue of law thus raised, and when it was not known that any issue of fact would ever be raised, or, if so, what issue would be tendered, an application was made by the plaintiff, its adversary, in which it was asserted that plaintiff was informed that defendant would claim that certain agents of defendant had no authority to make the publication complained of.   It was then averred that the scope of the authority of said agents was a material point in the case; that the contract between defendant and its agents "contains evidence *relating to the merits of the defense*, and without knowledge of its terms plaintiff might be surprised at the trial of the cause."

The sole purpose of the application was to anticipate the defendant's defense.   The contract was not essential to plaintiff's case in chief, even if there had been an issue of fact framed; but, as we have seen, there was no answer on file and the cause might have been finally determined on demurrer.

It is true the propriety of the order was not made a matter of exception but it is so intimately blended with the subsequent order adjudging defendant guilty of contempt, its character may be looked to in considering whether the circuit court exercised an unwise discretion upon the whole matter.   It will be noticed that the contract was not required as evidence on the trial but plaintiff *merely sought an inspection of the contract* as is permitted by section 2181, Revised Statutes, 1889.

This order is clearly subject to the criticism that it was prematurely and improvidently made if it had

been seasonably challenged. The court having ordered defendant to produce the contract or show cause why it should not, within the time limited, defendant made its return, in which it stated that the contract called for by the order had been annulled, vacated and set aside more than a year previous to the receipt of the order; that there had been but two copies of the contract in existence, one of which was retained by defendant and the other by Beecher, Schenck & Benedict, and that both of these had been destroyed and were not then in existence and that it was, therefore, impossible for the defendant to produce the contract for inspection in court.

That return was in writing and sworn to by the president of the defendant. It appeared by other affidavits that this return was drawn by the general attorney of the company in New York, Mr. Robert Sewell. Thereupon plaintiff orally moved the court to adjudge this return insufficient and that defendant be adjudged in contempt, and its pleadings stricken out, and judgment by default entered against it. The court, having considered the matter, adjudged the return was insufficient that "it was entirely consistent with a willful destruction of the paper after the order for its forthcoming was made and for the purpose of evading the order;" and thereupon, without further notice, to show cause why it should not be adjudged in contempt, held the return a contempt, struck out its demurrer, and entered a default judgment against it.

In so doing, the learned circuit court violated a familiar maxim of our law which has found expression in various forms, and it is this: In the interpretation of any instrument or writing, if it is susceptible of two constructions, one legal, the other illegal, the legal should be preferred. If a party's conduct is equally consistent with innocence or guilt, the presumption is

in favor of innocence always. If an act is as consistent with an honest, as a dishonest, purpose, the finding must be in favor of the honesty of the transaction.

Applying these rules to this return, the court, having discovered *only that it was consistent with the willful destruction of the contract* and *not* inconsistent with an honest destruction of the paper a year before its order was made, should have given it a construction consistent with a due respect to the court, and if there were doubt about the fact, ruled the defendant to state definitely when it was destroyed.

This is the universal practice in such cases and it is only when it appears beyond doubt that a party has willfully disobeyed a lawful order, that our courts resort to the harsh alternative adopted in this case. We think the court erred in the course it adopted. But if upon first blush the return appeared evasive and the court felt constrained to adopt a drastic treatment, the necessity for which does not satisfactorily appear to us, still, when the defendant came with the affidavits of its president and general counsel and showed that the contract had in fact been destroyed a year prior to the commencement of plaintiff's action and had not been destroyed to evade inspection, surely it purged itself of the supposed contempt and this has always been allowed "by its oath," says Justice Blackstone. Upon the full showing made in the application to set aside the default, the order striking out the demurrer should have been rescinded and defendant admitted to defend the case. Nothing less than this would have been in harmony with our liberal system of amendments and at all consonant with the fundamental principle that no one should be condemned or deprived of his property without a hearing according to the law of the land.

For these .reasons the judgment is reversed with directions to permit defendant to plead to the amended petition and award it a new trial. Judgment reversed and cause remanded. Burgess, J., concurs; Sherwood, J., not sitting.