[Crim. No. 2107. Third Dist. Feb. 23, 1949.]

In re INEZ ROSE, on Habeas Corpus.

Chas. H. Epperson for Petitioner.

C. P. Rendon for Respondent.

ADAMS, P. J.—Inez Rose filed in this court on September 20, 1948, a petition for a writ of habeas corpus, alleging therein that she was being restrained of her liberty illegally by Carlos A. Sousa, Sheriff of San Joaquin County, by reason of an alleged warrant, copy of which was attached to the petition and marked Exhibit ''A''; and that she had been imprisoned since the 1st day of September, 1948. She averred that the warrant aforesaid had been issued in a certain habeas corpus proceeding instituted in San Joaquin County in which action she had been commanded to and did appear with her infant son; that said matter had been continued from time to time but that she had not been served with notice nor ordered to appear on such subsequent days, nor had the court, in her presence, ever ordered her to appear on a succeeding day.

The warrant above mentioned was dated October 17, 1947, and recited that the court had issued a writ of habeas corpus in a proceeding instituted by R. H. Mercer and Sue Mercer, his wife, adoptive parents of Donnie Evans Mercer, a minor, and parents of this petitioner, for the custody of said minor, requiring Inez Rose to produce her minor son in the Superior Court of San Joaquin County on October 8, 1947, so that the court might inquire into the alleged unlawful detention of said minor son by her, his natural mother; that it appearing to the court on hearing on October 16, 1947, that counsel for Inez Rose did not then know the whereabouts of said mother and child, and it appearing to the court that said Inez Rose had knowingly and without just cause refused to attend said hearing after the first day's session when said proceeding was not completed, and had since wilfully refused to produce said child at subsequent hearings as commanded by the court and as commanded by the writ of habeas corpus, it was ordered ''pursuant to provisions of section 1497 of the Penal Code of the State of California, that the Sheriff of the County of San Joaquin apprehend the said Inez Rose and bring her forthwith into this Court.''

We issued the writ and released petitioner on bail. The sheriff made a return to the petition, alleging that petitioner had been arrested on August 31, 1948, by the Police Department of San Francisco under the writ of apprehension issued on October 17, 1947, pursuant to a petition filed by the

attorney for R. H. Mercer and Sue Mercer, and pursuant to an order of the Superior Court of San Joaquin County granting the prayer of the said petition on August 25, 1948, copies of which petition and order were attached to the return. He further averred that he had placed said Inez Rose in jail on September 1, 1948, ''pursuant to the writ of apprehension,'' and had produced her in court on September 2, 1948, at which time a continuance had been granted to September 20th, the court then remanding said Inez Rose to his custody; that on September 20, 1948, he had again brought petitioner before the court, at which time proceedings had been ordered stayed until the disposition of the writ issued out of this court, but said Inez Rose was further remanded to his custody.

The copy of the petition filed by the attorney for the Mercers on August 25, 1948, recited that on October 17, 1947, the court had made an order directing the issuance of a warrant for the arrest of Inez Rose, but that a diligent search by the Sheriff of San Joaquin County to find the *order* for the arrest of said Inez Rose had been without avail; and it was prayed that the court order the issuance of an alias in the words and figures of the original order, dated *nunc pro tunc* as of the issuance of the said original, and that same be handed to the sheriff for execution. Attached thereto was an order granting the prayer of said petition, said *order* being dated August 25, 1948.

Inez Rose filed an answer to the return of the sheriff and alleged therein that she had appeared in the superior court pursuant to the writ of habeas corpus issued therefrom, as commanded, at which time a demurrer and traverse to the writ were filed; that the matter was continued to October 14th, at which time evidence was offered and the matter continued to October 15th on which date it was submitted to said court; that she was not present on the latter date, but that the court then instructed her counsel to produce her on the 16th; and that on said 16th of October, 1947, the court ordered the issuance of the aforesaid writ of apprehension, and continued the matter to October 21st when further evidence was offered and an order granting the writ was filed; that counsel for Inez Rose was present but that she was not; that no copy of any writ or order for her to deliver the child to the Mercers was ever served upon her or her counsel; that on October 27, 1947, she had filed in this court her petition for writ of certiorari, which was ordered to issue; said order

stayed proceedings in the superior court until August 16, 1948, when the remittitur was filed in the trial court; that at no time was any order to show cause why she should not be punished for contempt for failure to attend proceedings in the trial court, or for failure to obey any order of said court, or any order to deliver the child to the Mercers ever served upon her.

Hearing in this court on the petition for the writ of habeas corpus was duly had on November 5, 1948, at which time counsel for the Mercers appeared in opposition to the writ of habeas corpus. The only evidence produced by either party consists of the minutes of the trial court dated October 15, 17 and 21, 1947, in the matter of the application of the Mercers for a writ of habeas corpus. The minutes of the 15th recite that on that date the matter was argued and submitted by counsel, and contain no order for continuance. The minutes of October 16th recite further hearing and an order that a warrant of apprehension be issued and served forthwith upon Inez Rose. The minutes of the 21st recite that the cause was submitted and that the court ordered that Inez Rose deliver the infant, Donnie Evans Mercer, to petitioners R. H. Mercer and Sue Mercer.

There is no evidence that this order was ever served on Mrs. Rose, and our records show that our order for the issuance of the writ of certiorari provided that proceedings in the lower court be suspended, and that Mrs. Rose retain custody of the child until the further order of this court. There is likewise no showing here that after the remittitur went down after the decision here, Mrs. Rose was served with any notice to produce the child in the lower court, or that, at the time of her arrest, she was even aware of the decision of this court.

 Assuming the facts stated in the sheriff's return to be true, we find no justification therein for the imprisonment of petitioner. The affidavit upon which the alias warrant of apprehension was issued recites no more than that the original writ of apprehension could not be found; and the order of the court, made on August 25, 1948, orders only that the alias writ issue. That writ upon its face is dated October 17, 1947, and commands that Mrs. Rose be apprehended and brought into court "forthwith." "Forthwith" means "immediately; without delay; within a reasonable time; promptly and with reasonable dispatch." (Webster's New International Dictionary.) Obviously, service of same some 11 months after its

issuance cannot be said to be "forthwith"; nor is it shown that the original of said writ had not long since served its purpose; and even if it was properly issued in the first place, the hearing in the proceedings in which it was issued had long since been terminated.

Counsel for respondent, on his appearance for respondent, stated to this court that Mrs. Rose was arrested and put in jail because "the judgment had been rendered, the decree, and she was to turn the child over to the legal parents"; that she was arrested for contempt of court, and because she had not obeyed the order of the court; that the reason for bringing her in was to ask why she had not obeyed the order. What order is not stated, but if we assume from the recitations of the writ itself it was because she had not appeared at continued hearings in the trial court in the original habeas corpus proceeding, it must be conceded that she did appear in answer to the original writ of habeas corpus, filed an answer thereto, testified therein, and was at all times thereafter represented in court by her counsel, and that the proceedings were terminated there in October, 1947. We are cited to no authority that requires a party who duly appears in response to a writ of habeas corpus to appear at all continuances of proceedings unless specifically ordered so to do. Also no good purpose could have been subserved by the presence of Mrs. Rose at the continued proceedings; and since the hearing proceeded to a conclusion without her presence it may well be said that her presence was waived. No injury to the Mercers can be said to have resulted from her absence as she had already testified; and even if so ordered, failure to appear is at most a constructive contempt punishable only as provided by sections 1211 and 1212 of the Code of Civil Procedure.

Section 1497 of the Penal Code, under the authority of which the writ of apprehension purports to be issued, provides for the issuance of a warrant *instead of a writ of habeas corpus*; also it provides for the apprehension of the person illegally held—the child in this case—and not the person holding him; and it is issuable only when there is reason to believe that the person illegally held will be carried out of the jurisdiction, or will suffer some irreparable injury "before compliance with the writ of habeas corpus can be enforced." This writ of apprehension was originally issued *after* the issuance and service of the writ of habeas corpus and the appearance of the parties in response to that writ; and so far as we are advised, no showing was made, either before the issuance of the original,

or before the issuance of the alias writ, that the child would be carried out of the jurisdiction, or suffer injury.

Proceedings for constructive contempt are governed by sections 1211 and 1212 of the Code of Civil Procedure. The second paragraph of section 1211 reads: ''When the contempt is not committed in the immediate view and presence of the court . . . an affidavit shall be presented to the court . . . of the facts constituting the contempt. . . .''

In *Strain* v. *Superior Court,* 168 Cal. 216, 220 [142 P. 62, Ann.Cas. 1915D, 702], the court said: ''It is settled that an affidavit which is made the basis of a contempt proceeding must show facts constituting a contempt or the court acquires no jurisdiction to proceed in the matter. (*Hutton* v. *Superior Court,* 147 Cal. 156 [81 P. 409].)''

The Strain case and several earlier cases are cited in *Wutchumna Water Co.* v. *Superior Court,* 215 Cal. 734, 740 [12 P.2d 1033], where the court said: ''The principle that the affidavit or affidavits upon which the contempt proceeding is based constitute the complaint, and unless they, upon their face, charge facts constituting a contempt, the court is without jurisdiction to proceed, and the order of contempt is void and will be annulled on *certiorari,* has found frequent expression in decided cases.'' (Cases cited.)

If, on the other hand, we assume from the statement of counsel that she was arrested for failure to comply with the order of the trial court to turn the child over to the Mercers, no affidavit or other complaint has been shown to have been filed as a basis for a contempt proceeding for such failure. Such an affidavit was a prerequisite to any contempt proceeding and it would have had to show that Inez Rose had notice or knowledge of such order of the court and had failed to comply with it. And if the purpose of arresting petitioner was to punish her for failure to appear after the determination of the certiorari proceeding it would have been necessary to show by affidavit that she had knowledge of the result of that proceeding, had been ordered then to produce the child whose custody she then had by virtue of the order of this court, and that she had refused to do so. Until such a showing was made there were no grounds for any contempt proceeding or for the imprisonment of petitioner. We are cited no authorities holding that one charged with constructive contempt may be arrested and imprisoned without having first been given notice of such charge and given an opportunity to refute it.

The customary procedure is to issue an order to show cause. This woman is not to be dealt with as one charged with crime because she desires to retain custody of her child; and as we find no justification for the imprisonment from which she seeks release, the petitioner is discharged from said imprisonment, restraint and custody, and her bail is exonerated.

Thompson, J., and Peek, J., concurred.