[L. A. No. 23241. In Bank. Jan. 14, 1955.]

LOWELL LYONS, Petitioner v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

A. Brigham Rose for Petitioner.

Harold W. Kennedy, County Counsel (Los Angeles), John B. Anson, David D. Mix and William E. Lamoreaux, Deputy County Counsel, for Respondent.

SCHAUER, J.—In this certiorari proceeding petitioner seeks annulment of an order of respondent superior court adjudging him guilty of a direct contempt of court and sentencing him to serve "five 24-hour days" in the county jail. We have concluded that, contrary to petitioner's contention, the court correctly held petitioner's acts to constitute a direct, rather than an indirect, contempt, and that the judgment should be affirmed.

The record shows that petitioner was sole counsel for defendant in a felony prosecution entitled *People* v. *Pardini*, Los Angeles County number 160665. Trial of the case before respondent court with a jury commenced on February 23, 1954. Petitioner was present at the trial on that day and on the morning of February 24. At noon on the 24th the

court announced a recess until 2 p.m. of the same day. At the appointed hour of 2 o'clock everyone except petitioner was present and ready to resume the trial. Petitioner did not appear until 2:45 p.m., at which time the court forthwith orally ordered him to show cause why he should not be punished for contempt. He stated that "Actually, I have no excuse, because I was asleep . . . I have had a very bad cold . . . I had left word with the answering service in my office to call me at a quarter to 2:00. They said they did. Apparently I didn't hear . . . I didn't get too much sleep last night." The court thereupon declared "I don't consider that an excuse. This is the second time in this identical case that you've done the same thing," found petitioner in contempt, and sentenced him to serve "five 24-hour days" in the county jail. Execution of the sentence was stayed until termination of the criminal trial.

As grounds for annulment petitioner urges there was no contempt, but that if any occurred it was indirect, that is, that it was not committed in the immediate view and presence of the court, and could therefore be punished only after affidavit, notice, and hearing, as provided for in sections 1211, 1212, and 1217 of the Code of Civil Procedure.

Section 1209 of the Code of Civil Procedure declares that "The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"1. . . . contemptuous, or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial . . .

"3. Misbehavior in office, or other wilful neglect or violation of duty by an attorney, counsel . . . , or other person, appointed or elected to perform a judicial or ministerial service; . . .

"5. Disobedience of any lawful . . . order . . . of the court; . . .

"8. Any other unlawful interference with the process or proceedings of a court . . ."

Section 128 of the Code of Civil Procedure provides that "Every court shall have power: 1. To preserve and enforce order in its immediate presence; 2. To enforce order in the proceedings before it . . .; 3. To provide for the orderly conduct of proceedings before it . . .; 5. To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a

judicial proceeding before it, in every matter appertaining thereto . . ."

The rules above quoted are in substance but restatements of principles which have been recognized and enforced since the dawn of modern jurisprudence. As stated in *In re Terry* (1888), 128 U.S. 289 [9 S.Ct. 77, 80, 32 L.Ed. 405], the power immediately to punish an offender for a direct contempt is, and from "almost immemorial antiquity" has been, accepted as an inherent power of courts upon the recognition and enforcement of which "depend the existence and authority of the tribunals established to protect the rights of the citizen, whether of life, liberty, or property, and whether assailed by the illegal acts of the government or by the lawlessness or violence of individuals. It has relation to the class of contempts which, being committed in the face of a court, imply a purpose to destroy or impair its authority, to obstruct the transaction of its business, or to insult or intimidate those charged with the duty of administering the law. Blackstone thus states the rule: 'If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination . . .'" (See also *Blodgett* v. *Superior Court* (1930), 210 Cal. 1, 10 [290 P. 293, 72 A.L.R. 482]; *People* v. *Turner* (1850), 1 Cal. 152, 153.)

 The duty of an attorney punctually to present himself in court and diligently to continue with a trial he had undertaken and not to unduly delay it for any personal matter reasonably within his control is clear; likewise it is clear that when an attorney who is the sole counsel appearing for a defendant in a felony case absents himself from the trial, he interrupts and effectively blocks, for the period of his absence, all proceedings in that trial. The written "Commitment on Contempt" made by the court in the present case, after reciting the facts as to the pendency of the trial, the proceedings therein, petitioner's failure to appear in the courtroom until the hour of 2:45 p.m. and his statement that he had been asleep, continues, "That said statement was not supported by any evidence or testimony and which statement the Court declined to believe. That on not less than ten prior occasions the said Lowell Lyons [petitioner] has either been substantially late or wholly failed to attend said Court in Department 43 at times when cases in which he was counsel of record were set for trial or other proceedings when his presence was necessary and that on

October 28, 1953, said Lowell Lyons was adjudged guilty of contempt of court for failing to appear in said Court, in a trial in which he was counsel of record and which was set for trial at 9:30 a.m. until the hour of 9:55 a.m. and for which contempt said Lowell Lyons was sentenced to serve twenty-four hours in the County Jail of said County, which sentence was suspended, with an admonition against a repetition of such conduct.

"THEREFORE, IT IS ORDERED AND ADJUDGED That said Lowell Lyons is guilty of contempt of Court and sentenced to serve five days of twenty-four hours each in the County Jail of this County." The factual elements of the commitment above set forth are not challenged.

The commitment order thus establishes that the court concluded that petitioner had had the ability to appear punctually at 2 o'clock and that his failure or neglect to appear was wilful, i.e., with "a purpose or willingness to commit the act, or make the omission." (See Pen. Code, §§ 7 (subd. 1) and 21; Code Civ. Proc., § 16; *In re Trombley* (1948), 31 Cal.2d 801, 807-809 [193 P.2d 734].) ■ It follows that petitioner's failure to be present in court at the announced hour for resumption of the trial in which he was engaged, thus interrupting the trial and interfering with the court proceedings, constituted contempt of court since, as petitioner himself stated, and as the court found, he had no valid excuse. (*Cf. In re Mackay* (1934), 140 Cal.App. 400 [35 P.2d 385]; *In re McHugh* (1908), 152 Mich. 505 [116 N.W. 459]; 59 A.L.R. 1272-1273.) ■ Although as hereinafter mentioned in relation to another aspect of the case it may be true that some weakness or illness contributed in a measure to petitioner's failure to appear punctually, and that his misconduct was not a deliberately and maliciously planned dereliction of duty, nevertheless upon the record there appears to have been a remissness and failure in performance of duty on his part, coupled with ability to perform, which the court was warranted in finding to constitute contempt.

■ We are likewise satisfied that petitioner's conduct constituted "a contempt . . . committed in the immediate view and presence of the court"—i.e., a direct contempt—which the court is empowered to punish summarily under the provisions of section 1211 of the Code of Civil Procedure. It is clear that the trial and the attorney's participation in it are in the court's immediate view and presence and, obviously, petitioner's obstruction of the trial by absenting

himself from the court is just as directly within the view and presence and knowledge of the court as would be any other conduct by him during, and directly affecting, the trial.

If, in truth, the absence with its ensuing interruption of the court proceedings is occasioned by some cause not reasonably within the attorney's control, the duty of explanation is but part and parcel of his duty to be present, and the burden of producing the exculpatory facts to the court properly falls upon the attorney. The latter, not the judge, is the officer of the court who under those circumstances owes a duty of proceeding. The effect of a contrary holding would be to absolve the defaulting attorney from any burden of explanation of his absence, no matter how flagrant and often repeated, unless the judge takes the burden of filing a charge and instituting formal proceedings. This would make of the judge not a judicial officer carrying out the responsibilities of his office, but a complaining witness in an adversary proceeding. Such a rule, we think, would not only be contrary to long established law but would not best serve the administration of justice.

It has been directly held in this state that failure of a sheriff to produce in court the body of one in his custody (*Ex parte Sternes* (1888), 77 Cal. 156, 163 [19 P. 275, 11 Am.St.Rep. 251]), or failure of a parent to produce in court a minor child of which such parent has custody (*In re Carr* (1944), 65 Cal.App.2d 681, 685-686 [151 P.2d 164]), when properly ordered so to do, constitutes a direct contempt which may be summarily punished. On the point here material the court in the Sternes case said (p. 163 of 77 Cal.): "The failure of Sternes to produce the body of Ah Fong, as the court found he had the power to do, before the court, in obedience to the writ, was a contempt committed in the face of the court, and no affidavit of the facts constituting the contempt was necessary to give the court knowledge thereof." In the Carr case the District Court of Appeal quoted from and followed the Sternes case. (See also *In re Robb* (1884), 64 Cal. 431 [1 P. 881]; 12 Am.Jur. 390-392.) Manifestly an attorney at law, under the circumstances shown here and in the absence of a showing to the contrary, may be inferred to have at least as much control in respect to presenting or absenting himself at court as can a sheriff or parent have in relation to producing or sequestering a third person.

Likewise manifest, as has already been shown, is the duty of an attorney, lacking a valid excuse, to be present at

all times during the trial of a case in which he is sole counsel for a party, and as an officer of the court he is bound to respect and comply with its pertinent and lawful orders given in open court in his presence.

It is vigorously urged that the severity of the sentence imposed upon petitioner in this case gives weight to the contention that it is unwise to permit the judge before whom a contempt is committed to himself mete out the punishment. (See *Offutt* v. *United States* (1954), 348 U.S. 11 [75 S.Ct. 11, 99 L.Ed.* ——].) This contention, however, does not lead to the conclusion that the sentence in this case is void. The record shows that the following took place when petitioner finally appeared in the courtroom at 2:45 p.m.:

"THE COURT: The record will show, in this case, that the Court took a recess at 12:00 o'clock p. m.; that everybody was here at the hour of 2:00 o'clock except defense counsel, Lowell Lyons, who has just appeared here at a quarter of 3:00.

"The Court at 2:35 issued a warrant for the apprehension of the said counsel, but counsel appeared before the warrant was served.

"The Court finds that cause exists for issuing the warrant, and that the defendant's counsel should show cause why he should not be punished for contempt.

"MR. LYONS: May I be heard at this time?

"THE COURT: Yes.

"MR. LYONS: Yes. At this time, if your Honor pleases, I would like to point out that I did intend to be here at 2:00 o'clock. I was across the street in my office.

"Actually, I have no excuse, because I was asleep. I just awoke. I have had a very bad cold. I overslept an hour.

"I had left word with the answering service in my office to call me at a quarter to 2:00. They said they did. Apparently I didn't hear, your Honor.

"I didn't get too much sleep last night. Apparently I needed sleep. I overslept for that reason.

"I know of no other reason, your Honor. There was no cause preventing me from appearing other than the fact I was asleep in my office.

"Those are the facts. I have been there all the time. I just awoke, and I came over immediately.

"THE COURT: I don't consider that an excuse.

"This is the second time in this identical case that you've done the same thing.

*L.Ed.Adv.Opn.: Page 7.

"Mr. Lyons: In this instance, your Honor, I wasn't physically able to be here, that's the reason. There wasn't anything wilful about it.

"The Court: No reason why you shouldn't be here.

"In the former· trial, we had exactly the same situation, and we took a recess in the afternoon, and after the recess you had entirely disappeared and couldn't be found on the floor anywhere; and after waiting some time you finally showed up without offering any excuse.

"*People* vs. *Sirianni,* that was on September 2, 1953, the case was on the trial calendar and you failed to show up at any time during that day. We discovered that you were trying a case in the Municipal Court.

"There are a number of instances of your being late, failing to be present at a time when you should be present. And on October 27 of 1953, we had a case of *People* vs. *Streeter* which went over to October 28 at 9:30. You were not present. An effort was made to locate you unsuccessfully. You finally showed up at 9:55 at your place at counsel table and made no excuse or explanation. You were informed you were in contempt of court, and the Court at that time found you in contempt.

"This has been such a chronic, habitual situation, the Court finds that you are now in contempt.

"It is the judgment and sentence of this Court for said contempt you be imprisoned in the County Jail for five 24-hour days."

■ As expressly stated in the commitment the court did not—and it was not bound to—believe petitioner's unsworn statement that he failed to appear at the appointed hour for resumption of the trial because he had been asleep. Nevertheless, the very character and extent of petitioner's derelictions as found in the commitment seem to indicate that perhaps his misconduct may have been contributed to by illness of some form. Whether such misconduct was on the one hand deliberately and maliciously calculated or, on the other hand was materially contributed to by ·illness or other mitigating condition, is a matter of substantial moment to the petitioner and to the court. ■ As carefully pointed out by this court when it first gave consideration to the subject (*People* v. *Turner* (1850), *supra,* 1 Cal. 152, 153) and as has never been doubted, the power to adjudicate a direct contempt "is necessarily of an arbitrary nature, and should be used with great prudence and caution. A judge should bear in mind that he is

engaged, not so much in vindicating his own character, as in promoting the respect due to the administration of the laws; and this consideration should induce him to receive as satisfactory any reasonable apology for an offender's conduct." Likewise, even where the finding of contempt appears essential to the proper conduct of the court's business no class of offense occurs to us in which the court should more readily search out and give effect to mitigating circumstances than in cases of direct contempts. ▮▮ Whether grounds exist upon which execution of the punishment here imposed should be remitted in whole or in part is a question which can be inquired into by the trial court on a proper application by petitioner. (See *City of Vernon* v. *Superior Court* (1952), 38 Cal. 2d 509, 520 [241 P.2d 243]; *City of Vernon* v. *Superior Court* (1952), 39 Cal.2d 839, 843 [250 P.2d 241].)

For the reasons above stated, the judgment of contempt is affirmed.

Gibson, C. J., Edmonds, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I agree that the failure of an attorney to attend court at the appointed time for trial of a criminal case, when he is representing a client whose case is being tried, may be contempt of court if he has no valid excuse and the judicial processes are obstructed. (*Ex parte Clark*, 208 Mo. 121 [106 S.W. 990, 15 L.R.A.N.S. 389]; *In re McHugh*, 152 Mich. 505 [116 N.W. 459]; *Wise* v. *Commonwealth*, 97 Va. 779 [34 S.E. 453]; *People* v. *McDonnell*, 307 Ill.App. 368 [30 N.E.2d 80], affirmed 377 Ill. 568 [37 N.E.2d 159]; *Nelson* v. *Wergland*, 104 N.J.Eq. 334 [146 A. 32]; *Vincent* v. *Vincent*, 108 N.J.Eq. 136 [154 A. 328]; *Appeal of Levine*, 372 Pa. 612 [95 A.2d 222]; *Klein* v. *United States*, 151 F.2d 286 [80 App. D.C. 106]; see *In re Walker*, 275 App.Div. 688 [86 N.Y.S.2d 726]; *In re Mackay*, 140 Cal.App. 400 [35 P.2d 385]; *Sellers* v. *Whaley*, 84 Ga.App. 715 [67 S.E.2d 241].) However, I cannot conceive how such contempt would be direct. The statute specifically requires that for a contempt to be direct it must involve conduct in the "*immediate view and presence of the court*" (Code Civ. Proc., § 1211). Such contempt may be punished summarily because the conduct concerned, and all of it, took place where the court heard and saw it, hence the court is in a position to act summarily, as all the facts involved are within his cognizance, and there exists a need

for quick action to prevent the continuance of actions which will bring the court in disrepute and obstruct the judicial process. Here such conditions do not exist. The only fact that the court knew about was that petitioner did not appear at the trial. It did not know whether that failure was due to circumstances beyond petitioner's control or was inexcusable neglect or wilful refusal to attend the trial. Without those facts, all of which occurred away from the court, and out of its sight and hearing, it was not in a position to ascertain whether there was contempt.

The majority opinion has little to say upon this subject except to express its firm belief that petitioner was guilty of contempt. It says: "The latter, not the judge, is the officer of the court who under those circumstances owes a duty of proceeding. The effect of a contrary holding would be to absolve the defaulting attorney from any burden of explanation of his absence, no matter how flagrant and often repeated, unless the judge takes the burden of filing a charge and instituting formal proceedings. This would make of the judge not a judicial officer carrying out the responsibilities of his office, but a complaining witness in an adversary proceeding. Such a rule, we think, would not only be contrary to long established law but would not best serve the administration of justice." This is wholly beside the point. Even if we assume petitioner should have the burden of excusing his failure to appear, still it should be after affidavit and hearing because the basis of any excuse for his conduct could not be known to the court. In fact no great burden is cast upon the judge because the fact of the failure to appear would ordinarily not be disputable while the main issue, the existence of an excuse, would involve events away from the court. In *Klein* v. *United States, supra,* 151 F.2d 286, 288, the question presented, *exactly the same as here,* was whether the failure of an attorney to appear was direct or indirect contempt. The court held the contempt indirect, stating: " '. . . The petitioner [contemnor] himself was absent. His acts ad interim were likewise absent. His doings went with him. It would seem like an exquisite and palpable contradiction of terms to complain in one breath that the petitioner [contemnor] and his acts were absent, and in the next breath to say that such absence constituted a presence; that is, a contempt committed in the presence of the court.' " The *same issue* was presented in *Ex parte Clark,* 208 Mo. 121 [106 S.W. 990, 997, 15 L.R.A.N.S. 389], and the same result reached and the court

said: "The complaint made and recited of the petitioner was his intentional absence from the courtroom to the delay and embarrassment of a trial in which the petitioner was engaged in counsel, 15 minutes at one time and 55 at another. The petitioner himself was absent. His acts ad interim were likewise absent. His doings went with him. It would seem like an exquisite and palpable contradiction of terms to complain in one breath that the petitioner and his acts were absent, and in the next breath to say that such absence constituted a presence; that is, a contempt committed in the presence of the court. The absence of an attorney, a juryman, a witness, an officer (including even a member of the bench himself), from the courtroom at the precise time due there may be susceptible of many innocent explanations. Each and every one of these absences are of a kind and, hence on a level, and none of these explanations are within the mere eyesight or earshot of any court of ordinary mortal endowments. These explanations can only come to the court by evidence aliunde his eye or ear, so that it would seem that absence ought not to be dealt with as essentially in the same class as things that happen in the view or hearing of the court. We think that is the more gracious and the better view comporting with the good sense of the thing, comes well within the quoted definition of an indirect contempt, and is sustained by the reasoning of well-considered cases." The *same was held* in *State* v. *Winthrop*, 148 Wash. 526 [269 P. 793, 795, 59 A.L.R. 1265], the court saying: "It is plain, we think, by this record, that appellant's conduct, viewed by the court as contemptuous, consisted in his inexcusable absence from the court when the case of *Lynch* v. *Page* was called for trial. We are unable to see how such absence on the part of appellant occurred in the presence or view of the court." To the same effect is *Ex parte Hill*, 122 Tex. 80 [52 S.W.2d 367, 368], where the court said: "It affirmatively appears therefrom that the district court has attempted to enter a summary final order adjudging relator in contempt for an alleged act of contempt, which, if it occurred at all, occurred outside the presence of the court. It is true that the judgment recites 'said actions were committed and done in the presence of the Court,' etc., but the judgment also affirmatively shows that the offense relator was accused of was the act of being thirty minutes late in attending court. In other words, the alleged act of contempt was for being absent from court. Obviously the offense of being absent from court could not take place in the presence of the court. We there-

fore take it that the statement in the judgment to the effect that the contempt occurred in the presence of the court is an erroneous legal conclusion not justified by the facts found, but utterly repugnant thereto.

"We do not think that the fact that when the relator did appear in court he attempted to offer the court an explanation for his alleged tardiness meets the' rules of due process required to give the court power to punish him for contempt." Indeed, where the precise question here presented has been involved and the matter discussed there is a unanimity of agreement that the contempt is indirect. Yet this court chooses a contrary course without reason and in face of the principle that contempt is a serious matter and should not be dealt with summarily unless the conduct is clearly within the immediate view and presence of the court. It relies upon two cases, *Ex parte Sternes,* 77 Cal. 156 [19 P. 275, 11 Am.St.Rep. 251], and *In re Carr,* 65 Cal.App.2d 681 [151 P.2d 164], which do not involve the question here presented, are not in point and are of doubtful.validity. In the Sternes case the person found guilty of contempt was a deputy sheriff who failed to produce his prisoner in habeas corpus proceedings. The court was primarily concerned with whether he could attack the court's contempt judgment. There was a hearing on the very question of whether the deputy had the ability to produce the prisoner. The court said: "The first inquiry before the superior court upon the return made by the respondent Sternes [deputy] therein was to determine the issue as to whether said Ah Fong was or was not in his custody or under his control at the .time of the issuance of or service of said writ upon him, said Sternes. It appears from the judgment that the judge *proceeded to take testimony as to said matter,* and found as a fact that said Ah Fong was in the custody and under the control of said Sternes at the time of the issuance and service upon him of said writ, and that it was within the power of said Sternes to produce the body of said Ah Fong in obedience to the writ at the time of service of the writ upon him. This is the record of the court, acting within its legitimate powers, and that record must be considered as speaking the truth, and *as conclusive* until it has been in some way set aside or vacated." (Emphasis added.) While the court did thereafter say that the deputy's failure to produce the prisoner was a direct contempt, it did so for the reason that: "An order to show cause or notice of a motion for an attachment would not have

served Sternes any useful purpose. He had an opportunity, as shown by the judgment, to explain the circumstances of his failure to obey the writ, and the court was not in duty bound to accept as true his return to the writ. The court may have erred in its proceedings subsequent to the issuance and service of the writ, and, by a misapprehension of the facts or misconstruction of the evidence, have done the petitioner here a great injustice; but so long as that court permits its record to remain as it is, other courts must treat it as the action of that court, and as conclusive upon all the matters decided by it and essential to its judgment." (*Ex parte Sternes, supra,* 77 Cal. 156, 163.) In other words, notice and hearing were had. In the Carr case the order was for a mother to produce her child, and she had been so ordered while she was in court and the matter was continued at her request and accordingly the District Court of Appeal stated: ". . . petitioner had an opportunity before the order was made to explain the reasons of her failure to obey" it. The real holding in those cases is that the requirement of an affidavit may be waived rather than that the contempt was direct. Such holding is, of course, contrary to the law. (*Phillips* v. *Superior Court,* 22 Cal.2d 256 [137 P.2d 838]; *Frowley* v. *Superior Court,* 158 Cal. 220 [110 P. 817]; *In re Davis,* 31 Cal.2d 451 [189 P.2d 283].) Moreover, it has been held that such conduct is an indirect contempt. (*In re Rose,* 90 Cal.App.2d 299 [202 P.2d 1064]; *Hughes* v. *Moncur,* 28 Cal.App. 462 [152 P. 968].)

The subject has been analyzed: "A direct contempt being an open insult to the person of the judges *while presiding* or a resistance to the powers of the court *in its presence,* while a constructive contempt is an act done, not in the presence of the court, but at a distance; which resists the court's authority, as, for instance, disobedience to process or an order of the court such as tends in its operation to obstruct, interrupt, prevent, or embarrass the administration of justice. *Direct contempts* include only those acts of which the court itself has personal knowledge; which takes place in the presence of the court or so near physically as to impede the proceedings. *Indirect contempts* consist of all contemptuous acts which occur *out of the presence of the court,* and of which the court itself has no personal official knowledge. (Dangel, Contempt, § 14.)

The majority opinion states: "As expressly stated in the commitment *the court did not—and it was not bound to—be-*

*lieve petitioner's unsworn statement that he failed to appear
at the appointed hour for resumption of the trial because he
had been asleep.* Nevertheless, the very character and extent
of petitioner's derelictions as found in the commitment seem
to indicate that perhaps his misconduct may have been con-
tributed to by illness of some form. Whether such miscon-
duct was on the one hand deliberately and maliciously cal-
culated or, on the other hand was materially contributed to
by illness or other mitigating condition, is a matter of sub-
stantial moment to the petitioner and to the court.'' (Em-
phasis added.) But it must be remembered that petitioner
had no opportunity to present evidence in support of his
excuse for being late. *He had been found guilty of con-
tempt even before he arrived in court after the noon recess.*
The situation would not have been different if petitioner had
stated that his automobile had broken down on his way to
court, or that the public transportation system, which he was
using, failed to function. In either case, according to the
majority view, the court was not bound to believe petitioner
or accord him an opportunity to furnish proof of the truth
of his statement. In other words, his mere absence from
court at the time fixed for his appearance is conclusive proof
of his guilt, and he is accorded no opportunity of showing that
his failure to appear was wholly blameless.

The situation here presents an ideal case for the applica-
tion of the rules which must be applied in cases of indirect
contempt. The alleged contemptuous conduct does not take
place in the presence or hearing of the court, and notice and
hearing must therefore be had to give the court jurisdiction.

Under the holding of the majority here, whenever an at-
torney is late for a court session, the judge can find him
guilty of contempt and sentence him to five days in jail with-
out complaint, hearing or evidence, regardless of any excuse
or justification the attorney may have to offer. In my opinion
such a holding is out of harmony with both the statutes of
this state and the great weight of authority in state and
federal jurisdictions.

For the foregoing reasons I would annul the judgment
of contempt here imposed.

Shenk, J., and Traynor, J., concurred.

Petitioner's application for a rehearing was denied Feb-
ruary 10, 1955. Shenk, J., Carter, J., and Traynor, J., were
of the opinion that the application should be granted.