THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* VICENTE PÉREZ DÍAZ, Defendant and Appellant.

No. CR-70-93.     Decided March 23, 1971.

---

[4] *Op. cit.* at p. 102.

*Vicente Pérez Díaz, pro se. Enrique González* and *Ángel S. Pérez González* for appellant. *Gilberto Gierbolini, Solicitor General, Federico Rodríguez Gelpí,* and *Américo Serra, Assistant Solicitors General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant appeals from the judgment of the Superior Court, Bayamón Part, which found him guilty of contempt and imposed a $25 fine on him. On the grounds we state

hereinafter, we conclude that said judgment should be affirmed.

In synthesis, the events which gave rise to the question at hand were the following:

(1) In the cases *E.L.A.* v. *Llovet, etc.,* Civil No. CS-68-2002 and Civil CS-68-1957, pending in the Superior Court, Bayamón Part, Judge Cándido Ceballos issued an order on February 27, 1969, by which he summoned defendants Llovet and Otero to appear on March 17, 1969, to show cause why they should not be punished for contempt.

(2) This order was duly served to appellant attorney on February 28, 1969, as counsel for defendants.

(3) On March 14, 1969, a motion signed by attorney Miguel Quiñones Vázquez was filed in said cases, where he requested, in the first place, that since the cases were set to be heard on their merits on June 5, 1969, both hearings be consolidated for said date and hour, and second, "If it is impossible for the court to make such setting, *we request an additional term for the defendants to appear through the attorneys of their choice, since they have not been able to reach or make arrangements with Attorney Vicente Pérez Díaz, who will be counsel in these cases.*" Finally, attorney Quiñones Vázquez stated in said motion that he could not represent defendants at that hearing of March 17, 1969, because he had other cases set in the Superior Court, San Juan Part. (Italics ours.)

(4) The day of the hearing for contempt, the party which filed the motion to punish Llovet and Otero for contempt, appeared and said they were ready. As indicated by appellant's counsel in his brief, defendant Llovet appeared alone at the hearing. He told the court that "My counsel did not come because he had a case in Ponce, and then a motion for continuance had to be filed because the attorney was changed . . . . We retained another attorney because he had gone to Ponce and I tried to find him on Thursday and on Friday, but I

could not find him and then I had to do . . . I had to use another attorney in order to do. . . ." The counsel for the moving party said that he had not been notified of the motion for continuance. Then the court stated, through Judge Meléndez Vela, that it was going to hear the case because it was going to issue an order against appellant. Finally, the court informed that ". . . Vicente Pérez Díaz is the counsel and that counsel has not withdrawn from the case; from the motion requesting the continuance it comes forth that Pérez Díaz shall be the counsel to conduct the case on its merits, Pérez Díaz has been notified of this setting and he has not appeared in court and he has not given any excuse for his nonappearance; an attorney named Quiñones Vázquez appears saying that he cannot appear at this court because he has other cases set in advance, in other words, to allow this to happen is to put the court calendar under the exclusive control of the attorneys for the parties and the court then to open and sit back to wait and see whether the attorneys have decided to hear the case or whether they have decided not to hear it and to continue same on their own. This court does not work like that, we have repeatedly said that for record."

(5) The trial court immediately issued an order directed to appellant to the effect that "Plaintiff has appeared today ready to commence the hearing of this incident, but defendant having alleged that he is without counsel as a result of the nonappearance of attorney Vicente Pérez Díaz, the court is forced to continue the hearing of the incident of contempt set for today for the only circumstance of the nonappearance of defendants' counsel . . . . This nonappearance is by all means unjustified and it constitutes contempt to the order of Judge Ceballos which was served by the Office of the Clerk to the aforementioned attorney on February 28, 1969 . . . . The court understands that the conduct of Attorney Vicente Pérez Díaz, in disregarding the order of this court which summoned him to appear today at the hearing of this incident, constitutes

contempt of said order, harmful to the court's authority; it orders, therefore, the mentioned attorney to appear at this court on March 24, 1969, at 9:00 a.m., to show cause why he should not be punished for contempt." To those effects it issued the pertinent order to show cause where a detailed recital of the events which gave rise to the same was made.

(6) When the hearing held on March 24, 1969, commenced, appellant requested the continuance of the hearing because his counsel, Mr. Enrique González, who was to represent him in this hearing, had not appeared because the hearing of a criminal case where said attorney was representing the defendant had not finished. Said continuance was denied because it had not been requested on time and the continuation of the hearing was ordered, since appellant was represented by another attorney.

The evidence adduced by appellant was the following:

(a) The testimony of defendant, Miguel Ángel Llovet, to the effect that he is the defendant represented by appellant in some cases of injunction; that appellant was always diligent until "The day when the trial had to be continued because he could not come"; that he saw appellant a Friday when the hearing (the hearing for contempt of the witness for noncompliance with the restraining order) was set for the following Monday, fact known by appellant and by the witness; that as to procuring the continuance of the hearing "He made several efforts on the telephone and he could not. First he tried to reach the court and he could not. Then he sent me to his colleague, Miguel Quiñones, for the latter to solve the situation because he could not appear; that originally he took the cases for injunction to attorney René Muñoz Padín who had his offices together with appellant; that Attorney Quiñones Vázquez drafted the motion for continuance filed that same Friday, March 14, 1969."

(b) The testimony of attorney René Muñoz Padín to the effect that Llovet took some cases to his office when appellant

worked there, appellant having been entrusted with the case for injunction; that Llovet went to see him on account of the setting for March 17, 1969; that there were conflicts in the settings of the criminal cases entrusted to the witness and the injunction and between the setting of the latter and the other cases appellant had in Ponce; that he did not find appellant in his office and then attorney Quiñones Vázquez prepared the motion for continuance in the office of the witness; during the eight years appellant had been in his office he had always been fully reliable and "there had never been an incident."

(c) Appellant's testimony to the effect that "In all of its parts I make Mr. Llovet's testimony and that of my colleague René Muñoz Padín part of my own because that is the truth of what happened in this relation . . . . With all respect I want to tell the court that it was not my intention, that I have always represented my clients and I have appeared in court and in almost twenty years in the practice of my profession it is the first time I am tried and that I have never committed contempt, what is more, not even in an argument have I been disrespectful to a judge or to a colleague, that the court can tell. And since March 18 when Mr. Llovet told me, I have had great worries and anguish in this affair. I ask the court that this being the first time and I think that the Hon. Judge who presides this court has observed my conduct as attorney in this court, with the respect with which I have always addressed myself and as always I have appeared in all the cases, that if the court in its decision believes that I have offended this court, with that same integrity of my character I ask the court to forgive me if I have offended the court."

(7) The incident having been submitted, the trial judge said that:

". . . this is a case of contempt for the nonappearance of colleague Pérez Díaz. Not one argument or one reason has been ad-

duced here to justify such nonappearance. All that has been asked from the court is rather to invoke the mercy or commiseration of the court to acquit colleague Pérez Díaz from his failure to appear.

"The evidence adduced by the colleague does not justify, in any manner, his failure to appear in this court on March 17. The motion filed, as to which no action was taken, is not a justification of that nonappearance and far from being a guide it is a completely misleading motion when on the one hand it mentions a continuance on the grounds of getting new attorneys, and on the other hand it says that defendant was going to retain a new attorney, and on another hand it requests the continuance of the hearing because the colleague had to go to Ponce on a very important case.

". . . The colleague Quiñones Vázquez filed the motion [for continuance] and he did not even appear. He filed it on the 14th and no action was taken to that respect, they took it for granted that the case had been continued failing to appear at the hearing to represent Mr. Llovet. At that moment the parties opposed to Mr. Llovet were ready in court for the hearing of the case. Mr. Llovet appeared and found himself without legal assistance. If the filing of a motion for continuance had the effect of continuing a case then the power of the courts to control their calendars and set the dates for the cases would have been delegated to the attorneys and it would be enough for the courts to do the calendars and wait for the attorneys to say when they were going to hear a case, if they were going that day, or if they were not going that day with a mere motion for continuance saying that they were not going to hear the case that day. That is not the rule of law which governs the judicial proceedings in Puerto Rico.

"There is no reason to justify the nonappearance of the colleague Vicente Pérez Díaz for his failure to appear on March 17, and therefore, the court finds him guilty of contempt and orders him to pay a twenty-five-dollar fine."[1]

To those effects the court rendered the following judgment:

"When this case was called for hearing today, defendant ap-

---

[1] The court could have imposed on appellant's client the payment of the costs of the other party's appearance and of a sum for attorney's fees.

peared assisted by his counsel, Mr. Ángel S. Pérez González and pleaded not guilty.

"By the result of the evidence submitted, the court finds defendant Vicente Pérez Díaz guilty of the offense of contempt and orders him to pay a TWENTY-FIVE ($25) DOLLAR fine and the costs of this action and in default of the immediate payment of said fine to suffer one day in jail for each unpaid dollar."

Appellant assigns that the court erred in interpreting the order issued by Superior Judge Cándido Ceballos in the sense that said order was directed to appellant. He also assigns that it acted without jurisdiction in issuing the order to show cause; that the judgment is void because it was rendered without jurisdiction and because the due process of law was not followed and because a warrant for that fine or commitment was not issued, and the act or acts constituting said contempt was not or were not set forth therein, neither were the date and place of the commission thereof and circumstances of the same. Finally, he points that the alleged contempt not having been committed in the presence of the court, the latter erred in acting as prosecutor and judge and that in the case of contempt it exercised its power outside the provisions of the statutes.

He argues that appellant's action does not constitute the wilful disobedience to which the Contempt Act refers (33 L.P.R.A. § 517); that contempt is governed only by the Act of March 8, 1906; that appellant's act took place out of the presence of the court; that there is no order directed to appellant in connection with the hearing of March 17, 1969; that the trial court violated the due process of law since it compelled appellant and his brother attorney Pérez González to go into trial even when appellant had another attorney as his counsel.

On the contrary, the Solicitor General maintains that the setting of the hearing of March 17, 1969, was duly served on appellant; that the attorney who signed the motion for the

continuance of said hearing "is an attorney who is not officially representing any of the parties, that he is not an attorney of record in the proceeding and he does not even request intervention nor does he appear in behalf of or at the request of Mr. Pérez Díaz to explain the latter's nonappearance at said hearing"; that "The counsel of record, Mr. Pérez Díaz, did not request any continuance on his own part *nor did he appear* on the date indicated. Defendants themselves appeared without legal assistance"; that appellant's unjustified absence constituted a "resistance . . . exerted" against the order of the court (pursuant to the provisions of § 3 of the Contempt Act) ; that in the event the sentence does not contain the information required by the said § 3, the case may be remanded so that another be rendered.

■ The power to punish for contempt is governed by the following legal provisions:

A.—The Act of March 1, 1902 (33 L.P.R.A. §§ 517–519) provides, among other things, that a court shall have the power to punish for criminal contempt any person or persons guilty of any of the following acts:

"1. . . . . . . .

"2. Wilful disobedience of, or resistance offered to or exerted against, any lawful writ, mandate or order issued or made by any such court in a suit or action pending therein . . . ."

Said Act fixes (a) a penalty of imprisonment not exceeding 30 days or a fine for not less than $200; (b) the following procedure ". . . and whenever a person is fined or committed to jail for a contempt of court or of the Industrial Commission, an order or warrant for such fine or imprisonment must be signed by the judge or commissioner delivering such sentence, setting forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstances, and specifying the sentence of the

court; otherwise such sentence will be wholly invalid and inoperative."

B.—Rule 242 of the Rules of Criminal Procedure which makes a distinction between the summary proceeding, which is when the judge certifies that he saw or heard the behavior constituting contempt, and the ordinary proceeding when the defendant, after previous notice, shall be given the opportunity to be heard and to prepare his defense.

C.—Section 29 of the Code of Civil Procedure (32 L.P.R.A. § 163) provides that "For the effectual exercise of the powers conferred by the last section, a judicial officer may punish for contempt in the cases provided in this Code." The preceding sections provide that every judicial officer has power, among other things, to enforce order in the proceedings before him, to command obedience and to compel obedience to its orders and processes, and to control the conduct of its ministerial officers and of all other persons in any manner connected with a judicial proceeding before it, or in every matter appertaining thereto. Sections 7 and 28 of the Code of Civil Procedure (32 L.P.R.A. §§ 44 and 162).

D.—Rule 40.9 of the Rules of Civil Procedure which provides that the failure, without adequate excuse, to obey a subpoena may be deemed as contempt of court. We have no doubt that the notice of the hearing of March 17, 1969, served on appellant, legally constituted a subpoena to the attorney requesting his appearance at said hearing in representation of his client.

In *Dubón v. Casanova*, 65 P.R.R. 786, 794 (1946), we said that:

"Contempt cases are *sui generis*. Strictly speaking, they are neither civil nor criminal; they occupy the twilight zone between traditional civil and criminal cases. *Germán* v. *District Court, supra; Sánchez* v. *Romany, Judge*, 53 P.R.R. 568, 570. Nevertheless, contempt cases are classified as either civil or criminal for certain purposes, such as appeal and the type of judgment

which may be rendered. It is true that some of the standards invoked in categorizing a contempt as civil or criminal are imprecise and difficult to apply. The result is that the courts sometimes call a case partly civil and partly criminal. But there is one fundamental distinction between civil and criminal contempt which we have repeatedly recognized. *In criminal contempt the proceeding and the judgment are punitive, to vindicate the dignity and authority of the court and to serve as a deterrent to offenses against the public, irrespective of the rights of private parties; whereas in civil contempt both the purpose of the case and the relief obtained therein are remedial, for the benefit of the complainant.* (Italics ours.)

"This difference in purpose between civil and criminal contempt in turn requires a difference in the relief granted: a fixed jail term or fine is imposed in criminal cases as against indefinite coercive imprisonment for civil contempt. This is because imprisonment for a fixed term is purely punitive and can have no remedial effect; any case in which such imprisonment is imposed must therefore be characterized as criminal contempt. On the other hand, a fixed term is irreconcilable with the remedial nature of civil contempt and cannot be imposed therein; rather, indefinite coercive incarceration until the defendant complies with the order contemned is the *raison d'être* of a civil contempt proceeding. . . .

"Curiously enough, the power of our courts to impose indefinite coercive relief in a civil contempt case has never been squarely passed on by this Court. In the only case in which it has been explicitly discussed, we left that question open. *Germán v. District Court, supra.* [63 P.R.R. 587 (1944).]"

In *People* v. *Báez*, 72 P.R.R. 167 (1951), a judgment which found an attorney guilty of criminal contempt consisting in behaving in open court in a disrespectful and offensive manner towards the court displaying scorn and contempt of court and ordering him to pay a $10 fine was affirmed. In this case we said that "an order adjudging a criminal contempt ought not to be reversed unless it is so apparent that no contempt was committed as to indicate that the court exercised its authority capriciously, oppressively,

and arbitrarily." As to the assignment based on the failure to comply with the requirement of § 3 of the Contempt Act (33 L.P.R.A. § 519), previously set forth, we said that "the sentence and the warrant referred to in § 3 . . . are two different documents." Therefore, before such noncompliance the judgment was set aside until the trial court entered an order or warrant of imprisonment pursuant to statutory provisions and to that effect the case was remanded to the trial court. See *People* v. *Susoni*, 81 P.R.R. 120 (1959).

In *Coll Moya* v. *Warden, Municipal Jail*, 89 P.R.R. 221 (1963), nine sentences for contempt entered against an attorney due to his disrespectful behavior were challenged. We vacated seven of the sentences because the same were not accurate and clear because they failed to state the facts with sufficient detail, to show, without the aid of speculation that the contempt actually occurred without the need of conjectures or interpretation, it being necessary to set forth each incident constituting contempt. We said in this case that "if the facts constituting contempt are not set forth . . . [that is, as provided by § 3 of the (Criminal) Contempt Act—33 L.P.R.A. § 519] the judgment is void."

In *Espinosa* v. *Ramírez*, 71 P.R.R. 10 (1950), we said that notwithstanding the fact that the sections of the California Code of Civil Procedure providing the penalties for civil contempt were omitted when the Code of Civil Procedure was approved, the courts have the power to impose the adequate penalty so that they may effectively exercise their incidental power to enforce their judgments. See, *People* v. *Susoni, supra*.

We said in *Guzmán Vega* v. *Piñero Piñero*, 91 P.R.R. 682 (1965), that disobediences in matters claiming private interests (nonfulfillment of the obligation of a father to support his children imposed by sentence of a court) may give rise to the imposition of a sentence for criminal contempt; that in the event of the latter a hearing should be held, after sum-

moning the person affected and warning him that he may be punished criminally if convicted, and that he may exercise such rights and defenses appropriate in a criminal action.

In *Ex Parte Robinson*, 86 U.S. 505–513, 22 L.Ed. 205 (1873), the court held that: "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power." It stated that this power has been limited and ruled by legislation.

In *Lyons* v. *Superior Court*, 278 P.2d 681 (Cal. 1955), an attorney was found guilty of contempt consisting in arriving late at a court for resumption of a criminal trial. The Supreme Court of California held that it was contempt in the presence of the court and could therefore be punished only after affidavit, notice, and hearing as provided for by the California Code of Civil Procedure. "The duty of an attorney punctually to present himself in court and diligently to continue with a trial he had undertaken and not to unduly delay it for any personal matter reasonably within his control is clear." In support of such determination the court cited the provisions of § 128 of the California Code of Civil Procedure (tantamount to § 7 of the Puerto Rico Code of Civil Procedure —32 L.P.R.A. § 44), and §§ 1209, 1211, 1212, and 1217 of the aforementioned Code which were not included in the Code of Puerto Rico. Reference was also made to §§ 7 and 12 of the California Penal Code. The abovementioned court stated that "The rules above quoted are in substance but restatements of principles which have been recognized and enforced since the dawn of modern jurisprudence . . . the power immediately to punish . . . for a direct contempt is, and . . . has been, accepted as an inherent power of courts. . . ."

In *Chula* v. *Superior Court*, 368 P.2d 107 (Cal. 1962), the Supreme Court of California affirmed a sentence of 4 days in prison against an attorney for having incurred contempt in failing to appear with his client before the trial court at the time set therein to render judgment in a criminal case. In this case the proceeding followed is similar to the one followed in the case at bar. The mentioned Court cited *Lyons, supra,* in support of its decision. Said court said that the order adjudging a person guilty of contempt in this case must recite and recites facts showing acts which constitute contempt because it is thus provided by § 1211 of the Code of Civil Procedure. This provision was not included in the Puerto Rico Code of Civil Procedure. Mr. Justice Traynor in his dissenting opinion (for other reasons) said that the order to show cause issued by the trial court in this case was an indispensable requirement of the due process of law to give an opportunity to the attorney of knowing which was the charge and to prepare himself for his defense, for the court did not know, when the attorney failed to appear the day fixed to pronounce judgment, whether or not said attorney had a valid excuse to justify his nonappearance. *In Re Clawans,* 174 A.2d 367 (App. Div. N.J. 1961) ; *Lee* v. *Bauer,* 72 So.2d 792 (Fla. 1954) ; *People* v. *McDonnell,* 37 N.E.2d 159 (Ill. 1941) ; Annotation—*Attorney—Court Attendance—Contempt,* 97 A.L.R.2d 433. See, also, the article by professor Dobbs entitled *Contempt of Court—A Survey,* published in 56 Cornell L.Q., No. 2, January 1971.

■■ We reiterate that the courts have inherent power to punish for contempt in order to enforce their judgments, orders and writs and to maintain order in judicial proceedings. This power, however, may be ruled and limited by law. The failure of an attorney to appear without just cause at a hearing set by the court which took cognizance of the case and of which hearing he is notified in advance, constitutes a nonfulfillment of a court order and an undue alteration of

the order of the proceeding set by the court for the action. Such behavior may, therefore, be punished with fine or prison since it constitutes contempt of court.

This type of contempt is not necessarily of a criminal nature. It is established by the ruling provisions of the Puerto Rico Code of Civil Procedure. Since said legal body has not provided, as the California. Code from where we took it, specific provisions about its procedure and the penalties to be imposed, it is necessary to decide on this particular in the case law. Since somehow this type of contempt is similar to criminal contempt since it is directed against the dignity and authority of the court, we think it wise for its procedure to be similar, as far as the circumstances permit and deserve it, to that established by the Act of March 1, 1902.

■ When dealing with a case of contempt like the instant case, the court should give to the attorney, through an order to show cause within a reasonable term, the opportunity to know the offense charged against him, the circumstances under which, and the place and date when he incurred same, and the facts which constitute it, so that he may have a reasonable opportunity to prepare his defense.

■ In the event the court concludes that the attorney incurred the contempt charged against him, the sentence should set forth the act or acts constituting such contempt as well as the date and place of the commission thereof and the circumstances of the same.

Let us see now whether appellant incurred the contempt for which he was punished and if the proceeding set forth above was followed in this case.

The facts established show that appellant was the attorney for defendants Llovet and Otero in a case of injunction; that the latter were summoned on February 27, 1969, to appear before the court on March 17, 1969, to show cause why they should not be punished for contempt. Said summons was

served on appellant on February 28, 1969. It was not until March 14 when defendant Llovet, according to his testimony in the hearing of the 17th of that month, when he was not able to find appellant that day nor the day before, he had to use another attorney who prepared the motion for continuance but did not appear at the hearing. From this testimony and from the testimony of attorney Muñoz Padín it can be inferred that upon failing to find appellant, Llovet resorted to attorney Muñoz Padín, and the latter then made attorney Quiñones Velázquez prepare the motion for continuance.

As well stated by the trial judge, the motion for continuance is confusing to the point that it sets forth that "they could not reach or make arrangements with Mr. Vicente Pérez Díaz" (appellant). This tends to affirm Llovet's previous testimony to the effect that he could not reach appellant on the 13th or 14th of March 1969. It is in the hearing for appellant's contempt where Llovet contradicts himself and testifies there that he saw appellant on Friday, the latter told him that he could not be present therein and referred him to attorney Quiñones.

■ Appellant's testimony does not mention any justification for his nonappearance on March 17, 1969. It does not show whether he took any step between February 28, when he was notified of the setting of the hearing of March 17, 1969, and March 14, 1969, when Llovet tried to reach him in regard to the aforementioned hearing for the purpose of procuring its continuance. Not only does he fail to sign the motion for continuance but he does not leave any timely proof in the record of the reason why he cannot appear at the hearing of March 17, 1969. On the contrary, the motion for continuance itself which was filed, and Llovet's original testimony prove that appellant simply disregarded the notice of the setting of said hearing, neglected his obligation to act in regard to the same and that his omission constitutes contempt of an order of the trial court which proved to be an untimely

alteration of the order in the proceedings in this case established by said court. It is at the last minute, when it is not possible to take any effective step in court, that another attorney, at the request of defendant Llovet, prepares the motion for continuance and states therein that he was not able to communicate with appellant. Appellant's testimony, in effect, limits itself to resort to the court's benevolence to excuse his noncompliance with his client and with the court.

Under the foregoing circumstances we conclude that the court was justified in starting the contempt proceeding and in view of the evidence adduced, in finding appellant guilty of contempt imposing on him a $25 fine as punishment. The court had jurisdiction to issue the order to show cause, which complies with the requirements previously indicated. Appellant's other assignments lack merit.

■ Now then, since the judgment does not set forth the facts which we previously said it should contain, it must be set aside and the case remanded to the trial court to render another in harmony with the decision herein. *Cf. People* v. *Escalera*, 95 P.R.R. 145, 149 (1967).

Mr. Justice Hernández Matos did not participate herein. Mr. Justice Pérez Pimentel and Mr. Justice Dávila concur in the result.